UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. |
| v. | ) | |
| | ) | Judge |
| SUBWAY REAL ESTATE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

The United States of America, through its attorney, John R. Lausch, Jr., United States Attorney for the Northern District of Illinois, for its complaint against defendant Subway Real Estate, LLC states as follows:

### Parties

1.     Plaintiff is the United States, land owner, and, through the General Services Administration (GSA), lessor to defendants.

2.     Defendant Subway Real Estate, LLC, ("Subway") is a Delaware Limited Liability Corporation with its principal place of business in Milford, Connecticut.

### Jurisdiction and Venue

3.     This court has jurisdiction under 28 U.S.C. § 1345 because the United States is the plaintiff.

4.     Venue is proper under 28 U.S.C. § 1391(b)(2) because the transactions forming the subject matter of this complaint occurred within the Northern District of Illinois and the property that is the subject of this action is situated in this district.

**Lease Agreement Requirements**

5.     The United States is the owner of commercial real estate located at 236 S. State Street, Chicago, Illinois 60604, also known as 11 W. Quincy Court, Chicago, Illinois 60604, formerly known as 10 W. Jackson Street.

6.     The United States, through GSA, entered into a lease agreement with Subway on October 11, 2017, where the United States agreed to lease commercial real estate located at 236 S. State Street, also known as 11 W. Quincy Court, Chicago, Illinois 60604, for the operation of a Subway restaurant.  A copy of the lease agreement is attached as Exhibit A.

7.     Article 5 of the lease ("Rent") required Subway to submit monthly payments by the first of each month.

8.     Article 17 of the lease ("Failure to Pay Rent or Abandonment") provides that the United States may terminate the lease if Subway fails to make rental payments for two consecutive months.

9.     Article 43 of the lease ("Default, Covenant to Operate, Abandonment") permits the United States to terminate the lease if Subway materially failed to perform any provision of the lease and did not make reasonable efforts to cure the failures within a 30-day period, after receiving a written notice that specified such failure.

**Breach of the Lease Agreement**

10.     The United States sent a "Notice to Cure" letter to Subway on February 6, 2019. Attached as Exhibit B is a copy of this Notice to Cure letter.

11.     Subway failed to pay rent for November and December, 2018, and January and February, 2019.

12. The United States terminated the lease March 13, 2019, and sent a "Termination Notice" letter to Subway. Attached as Exhibit C is a copy of this Default and Termination Letter.

13. Subway failed to pay rent for November and December, 2018, and January, February, and March, 2019.

14. Subway has partially cured the delinquent payments, but remains indebted for rent payments from February 2019 through May 2019, in breach of Article 5, "Rent."

15. Subway remains indebted in the amount of $30,254.68 for rent, interest, penalties, and administration fees from February 2019 through May 2019.

## Count I
## Forcible Entry and Detainer

16. The United States realleges and incorporates paragraphs 1 – 15.

17. The United States is entitled to possession of the property under 735 ILCS 5/9-102(a)(4) because it terminated the lease on March 13, 2019, because Subway failed to submit monthly payments in accordance with Article 5 of the lease agreement.

18. The United States demanded that Subway vacate the premises by March 31, 2019, and it has not.

19. Despite the termination of its lease, Subway is withholding possession of the premises.

WHEREFORE, the United States demands judgment against the defendant Subway Real Estate, LLC, as follows:

   a. for possession of the property commonly known as 236 S. State Street, also known as, 11 W. Quincy Court, Chicago, Illinois 60604, Unit 24454 against Subway Real Estate, LLC

b.   costs of suit, including but not limited to, a filing fee of $400.00, as authorized by 28 U.S.C. §§ 2412(a)(2) and 1914(a), and

c.   for such further relief as the court deems appropriate.

**Count II**
**Recovery of Rent**

20.   The United States realleges and incorporates paragraphs 1 – 15.

21.   Subway remains indebted in the amount of $30,254.68 for unpaid rent from February 2019 through May 2019.

22.   Subway has been willfully holding over the real estate since April 1, 2019, when the United States' demanded possession.

23.   Since Subway began willfully holding over the real estate on April 1, 2019, $15,127.34 in rent has accrued.

WHEREFORE, the United States demands judgment against the defendant Subway Real Estate, LLC, as follows:

a.   for judgment in the amount of $30,254.68 for unpaid rent, interest, penalties, and administrative fees, plus any and all rents, interest, penalties, and administrative fees that accrue subsequent to the filing of this action and remain unpaid to date on the account of the property commonly known as 236 S State Street, also known as 11 W. Quincy Court, Chicago, Illinois 60604.

b.   for additional judgment in the amount of $30,254.68 under 735 ILCS 5/9-202 for double the rent owed for the time period between April 1, 2019 through May 2019 in which Subway willfully held over the detained area, plus the amount that accrues until Subway vacates the real estate,

c.  costs of suit, including but not limited to, a filing fee of $400.00, as authorized by

28 U.S.C. §§ 2412(a)(2) and 1914(a), and

d.  for such further relief as the court deems appropriate.

Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

By: s/ Scott D. Heffron
    SCOTT D. HEFFRON
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 886-4190
    scott.heffron@usdoj.gov

# EXHIBIT A

U.S. GOVERNMENT LEASE OF
REAL PROPERTY
No. GS-05P-OIL~~0310~~  *otw/*
  *00310*



## U.S. GENERAL SERVICES ADMINISTRATION
## PUBLIC BUILDING SERVICE
## REAL ESTATE DIVISION
## GREAT LAKES REGION

---

# U.S. GOVERNMENT LEASE OF REAL PROPERTY

---

OUTLEASE NUMBER GS-05P-OIL00310

FOR THE SPACE LOCATED
236 SOUTH STATE STREET
CHICAGO, ILLINOIS 60604
(IN THE BUILDING ALSO KNOWN AS 11 WEST QUINCY COURT)

GSA BUILDING NUMBER IL 2125

SENSITIVE BUT UNCLASSIFIED (SBU)
COPYING, DISSEMINATION, OR DISTRIBUTION OF THIS DOCUMENT
TO UNAUTHORIZED RECIPIENTS IS PROHIBITED.
Do not remove this notice.
Properly destroy or return documents when no longer needed.

U.S. GOVERNMENT LEASE OF
REAL PROPERTY

## CONTENTS

Articles                                                                                     Page

1.  USE ........................................................................................................ 4
2.  PREMISES ............................................................................................. 5
3.  TERM ...................................................................................................... 5
4.  RENEWAL OPTION(S) .......................................................................... 5
5.  RENT ...................................................................................................... 5
6.  SPACE DELIVERY AND POSSESSION ............................................... 6
7.  "AS IS" ................................................................................................... 6
8.  APPLICABLE LAW ................................................................................ 6
9.  ALTERATIONS AND IMPROVEMENTS ................................................ 7
10. BUILDING SERVICES ........................................................................... 8
11. KEYS ...................................................................................................... 9
12. INSURANCE ........................................................................................... 9
13. STATE OR LOCAL TAX ......................................................................... 10
14. CONTINGENT FEES .............................................................................. 10
15. SECURITY DEPOSIT ............................................................................. 10
16. MAINTENANCE AND CARE OF PROPERTY ....................................... 10
17. FAILURE TO PAY RENT OR ABANDONMENT .................................... 10
18. LESSEE EQUIPMENT ........................................................................... 11
19. SUBLEASE ............................................................................................ 11
20. SUBORDINATION AND ESTOPPELS ................................................... 11
21. HOLD HARMLESS ................................................................................. 11
22. HAZARDOUS OR ANNOYING USE OF THE PROPERTY ................... 12
23. COMPLIANCE WITH PUBLIC BUILDINGS RULES AND REGULATIONS .. 12
24. RIGHT OF INSPECTION ....................................................................... 12
25. FAILURE TO INSIST ON STRICT PERFORMANCE ............................. 12
26. NOTICE IN WRITING ............................................................................. 12
27. FACILITIES NONDISCRIMINATION ...................................................... 13
28. RESTRICTIVE PROVISION ................................................................... 14
29. RECORDING .......................................................................................... 14
30. EXAMINATION OF RECORDS .............................................................. 14
31. DISPUTES ............................................................................................. 14
32. GRATUITIES .......................................................................................... 15
33. ACCIDENT PREVENTION ..................................................................... 16
34. OCCUPANT EMERGENCY PLAN ......................................................... 16
35. DENIAL OF ACCESS ............................................................................. 16
36. OUTDOOR SEATING, PARKING, DELIVERIES, SIGNAGE OR OTHER USE ... 16
37. FURTHER RESTRICTIONS ON USE OF SPACE ................................. 17

INITIALS:  & _____
GOV'T          LESSEE

U.S. GOVERNMENT LEASE OF
REAL PROPERTY

| Articles | Page |
|---|---|
| 38. HANDICAPPED FACILITIES | 17 |
| 39. SECURITY | 17 |
| 40. DAMAGE BY FIRE OR OTHER CASUALTY | 18 |
| 41. ENCUMBRANCES PROHIBITED | 18 |
| 42. CHANGES | 18 |
| 43. DEFAULT, COVENANT TO OPERATE, ABANDONMENT | 19 |
| 44. SAFEGUARDING AND DISSEMINATION OF SENSITIVE BUT UNCLASSIFIED (SBU) BUILDING INFORMATION | 19 |
| 45. INVALIDITY OF PARTICULAR PROVISIONS | 22 |
| 46. SINGULAR/PLURAL | 22 |
| 47. CAPTIONS | 22 |
| 48. CAPITALIZATION OF TERMS | 22 |
| 49. COVENANT OF TITLE AND QUIET ENJOYMENT | 22 |
| 50. OTHER | 22 |
| 51. ADDITIONAL DOCUMENTS (SEE BELOW) | 23 |
| SIGNATURE PAGE | 23 |

Exhibits

| EXHIBIT A | Floor Plan | 24 |
| EXHIBIT B | Premises Alterations | 25 |
| EXHIBIT C | Rules and Regulations Governing Conduct on Federal Property | 26 |
| EXHIBIT D | LEED Requirements | 27 |
| Rider | Rider | 38 |



U.S. GOVERNMENT LEASE OF
REAL PROPERTY

THIS LEASE entered this _11th_ day of _October_ , 2017, by and between the United States of America ("Lessor"), acting by and through General Services Administration ("GSA"), and SUBWAY REAL ESTATE, LLC, A DELAWARE LIMITED LIABILITY COMPANY ("Lessee"), for the space known as 236 S. State Street (and also known as 11 West Quincy Court and also formerly known as 10 West Jackson), located in the City of Chicago, County of Cook, and State of Illinois ("Property"), comprised of 1,404 net usable square feet of retail space on the first floor ("Premises").

RECITALS

WHEREAS, GSA desires to lease (a.k.a. "outlease") the Premises to Lessee until such time that the Premises are needed by the Government;

WHEREAS, the Property has been identified as eligible for inclusion on the National Register of Historic Places, under the authority of 16 U.S.C. §470h-3(b), rent proceeds from this lease may be used to defray the costs of administration, maintenance, repair, and related expenses incurred by Government;

WHEREAS, that certain earlier lease agreement between Lessor and Lessee dated May 7, 2010, shall end effective September 30, 2016, and be superseded and replaced by THIS LEASE upon full execution and payment of outstanding rental amounts, effective retroactively to October 1, 2016;

NOW THEREFORE, in exchange for good and valuable consideration, the parties agree to the following terms and conditions of this Lease:

1. USE

The Premises shall be used exclusively to operate a Subway Sandwich fast-food restaurant for on and off premises consumption and _in no conflict with exclusive rights granted by Lessor to existing tenants of the building._ Hours of operation are seven days a week, closing no later than 9:00 pm.

Exclusive rights granted by Lessor to existing tenants of the building are selling services and products typically offered by a store that sells mobile phone services, mobile phones and related accessories; retail sale of vitamins, mineral supplements, weight gain products, diet and weight loss products, sports nutrition supplements, health foods, natural source cosmetics and other natural source beauty aids, retail sale of male and female indoor exercise clothing, wear and apparel, exercise equipment, exercise related accessories (including charts, books, cd's and dvd's), diagnostic equipment (including meters, watches, kits and scales), and such other items as are sold from time to time in GNC stores, and the use of coin operated machines for health check screening; selling submarine and deli style sandwich food items (Subway); and providing or offering banking or other financial services, offer for sale or rental, in connection with all or any part of its business operations, any grocery items including snacks, foods and beverages commonly sold at first class convenience stores, cigarettes and tobacco products, unless vended by machine, beer, wine and or liquor for off premises consumption, health and beauty aids, frozen or semi-frozen carbonated beverages, candy unless gift boxed or sold in bulk, coffee or hot chocolate by the cup, newspapers, magazines, paperback books, lottery tickets, money orders, phone cards and gift/cash cards (other than gift cards for the particular business occupying the space). Excepting any existing tenants, no other tenant in the building shall be permitted to sell submarine and deli style sandwich food items as their primary theme.

(The office building is subject to the Randolph-Sheppard Act which provides opportunities for blind vendors and entitling blind vendors and their State licensing agencies to income from vending machines on all federal property.)

LEASE NUMBER GS-05P-OIL00310          4          INITIALS: _____ & _____
SEPT2016 VERSION     SUBWAY STORE 24454                    GOV'T        LESSEE

U.S. GOVERNMENT LEASE OF
REAL PROPERTY

Lessee may not engage in these activities: the storage and/or use of hazardous/flammable materials, other than cleaning products and materials used in Lessee's trade and in reasonable quantities, some of which may be classified as hazardous materials, are prohibited.

## 2. PREMISES
It is agreed by Lessee and Lessor that the Premises consist of 1,404 net usable square feet ("USF") of street-level retail space in a multi-story building, as detailed in Exhibit D. Lessee has inspected and knows the condition of the leased premises and agrees to accept same in its 'as is' condition. It is further understood that the leased premises are hereby leased without any additions, improvements or alterations thereto. Lessor provides no warranty of suitability of use of premises. The basement is not part of the Premises.

## 3. TERM
The term of this Lease shall commence on October 1, 2016, and terminate on September 30, 2021, subject to Renewal Options contained herein. Term commencement is retroactive to include period from which previous agreement terminated.

Upon expiration or termination of this Lease, Lessee shall vacate the Premises, remove its property therefrom and promptly yield and place the Lessor in peaceful possession of the Premises, free and clear of any liens, claims, or encumbrances caused by the Lessee or any of its contractors or agents, and in as good condition as the Premises existed at the commencement of this Lease, ordinary wear and tear excepted.

Upon expiration of the term of the Lease, any occupancy by Lessee will be deemed a month-to-month "holdover" tenancy, with 30 day termination rights by either party. Rental rate shall be 150% of the then current rental rate during holdover period.

Lessee acknowledges that he acquires no right by virtue of execution of this Lease to claim any benefits under the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Public Law 91-646.

## 4. RENEWAL OPTION(S)
Lease shall renew automatically for two (2) additional five (5) year periods, provided no event of Default exists at the time of the expiration of the term, and unless Lessee gives Lessor one hundred eighty (180) days written notice of its intention not to renew.

## 5. RENT
a) Effective October 1, 2016, Lessee shall pay the Lessor an annual rental of $ 87,620.00 payable at the rate of $ 7,301.67, per month in advance. Rent for part of a month shall be prorated.

b) Effective October 1, 2021, the first renewal option period, Lessee shall pay the Lessor an annual rental of $ 96,382.00 payable at the rate of $ 8,031.83, per month in advance.

c) Effective October 1, 2026, the second renewal option period, Lessee shall pay the Lessor an annual rental of $ 106,020.20 payable at the rate of $ 8,835.02, per month in advance.

d) All rental payments owed the Government shall be made payable to the General Services Administration, and shall contain the following outlease number for identification purposes: GS-05P-OIL00310 . Payments are to be paid by check or money order and mailed to the General Services Administration; P.O. Box 301511; Los Angeles, CA 90030-1511, for

U.S. GOVERNMENT LEASE OF
REAL PROPERTY

receipt on or before the first day of each month. (This address is for the receipt of rental payments ONLY, with all other correspondence submitted to the undersigned GSA Contracting Officer (hereinafter referred to as the "Contracting Officer").) The address for delivery of rental payments by non-US Postal Service carrier is General Services Administration; Citibank GSA, Lockbox # 4278, 6801 Colwell Blvd, Irving, TX 75039. Tenant is also encouraged to utilized www.pay.gov to submit rent payments.

e) In addition to the rent, Lessee shall pay the sum of $262.00 monthly ($3,144.00 per year) for trash removal services, which have to be provided by the Lessor. The amount payable for trash removal services shall be recalculated each renewal period.

f) The United States Department of Justice and the US GAO have jointly issued amended Federal Claims Collection Standards (4 CFR Parts 101-105) which reflect changes to the Federal Claims Collection Act of 1966 (31 U.S.C. 3701-3719) made by the passage of the Debt Collection Act of 1982 (P.L. 97-365, 96 Stat. 1754). Under the provisions of the Debt Collection Act of 1982, the following remedies in the collection of delinquent rental payments may be taken by the Government:
   (1) Interest shall be assessed on delinquent lease payments at the rate of the current value of funds to the Treasury as prescribed by the Secretary of the Treasury on the date interest begins to run or another rate of interest shall be assessed if another rate is necessary to protect the interests of the United States.
   (2) Penalty charges not to exceed six percent (6%) per year shall be assessed on any portion of a delinquent lease payment over ninety (90) days past due.
   (3) Administrative charges may be assessed to cover the costs of processing and handling delinquent lease payments.
   (4) Delinquent outlease debtor information may be disclosed to credit bureaus.
   (5) Delinquent outlease debtor files may be referred to debt collection agencies.
   (6) Delinquent outlease payments may be collected by administrative offset whenever possible.
The Government's remedies to collect delinquent outlease payments shall be administered by:

General Services Administration; Finance Division (7BCAR); 819 Taylor Street; Fort Worth, Texas 76102; telephone (817)978-0538.

6.  SPACE DELIVERY AND POSSESSION
Lessee is currently in possession of Premises, and is accepted by Lessee in its 'as-is' condition.

7.  "AS-IS"
The Property is offered, and is accepted "as is".

8.  APPLICABLE LAW
The Lessee shall be subject to all Federal Property Regulations and Rules of Occupancy that apply to Federal tenants (Title 41, CFR, Part 102-74 and Title 18, USC, Section 930). General Services Administration shall administer such rules and regulations. As a minimum, Lessee shall comply with all applicable municipal and state laws, ordinances, and regulations; and

U.S. GOVERNMENT LEASE OF
REAL PROPERTY

obtain and pay for all licenses and permits as may be required to operate the Premises for its intended purpose, as a business diagnosing problems and repairing and servicing mobile (wireless) devices. In addition, wherever the following are more stringent, the facility shall also comply with all applicable Public Building Service Facility Standards (PBS P100); national codes (National Electrical Code for electrical, National Fire Protection Association for life safety and Uniform Building Codes for seismic resistance); Occupational Safety & Health Administration codes, and the Uniform Federal Accessibility Standards ("UFAS"). Stringency shall be that which assures the highest level of quality, occupant safety, and accessibility of the facility.

Lessee shall also comply with all applicable federal, state, local government and municipal laws, statutes, ordinances, rules, regulations, codes, decrees, orders and other such requirements (collectively, Laws) including, without limitation, Laws regarding wages and hours, health, safety, building codes, emergencies, and security including applicable provisions of Executive Order No. 13658, Establishing a Minimum Wage for Contractors. Lessee shall apply, pay for, and obtain all required licenses and permits including, without limitation, licenses and permits for fire and life safety requirements.

9. ALTERATIONS AND IMPROVEMENTS

The Premises is offered and is accepted 'as-is.' The Lessee agrees to accept the Premises in its present condition to include latent conditions within the Premises that may subsequently become known. Any proposed changes / alterations to the space shall be the sole responsibility of the Lessee, with prior approval and acceptance by Lessor. Lessee shall comply, for all subsequent alterations of Premises, with the provisions of Exhibits C and D to this Lease ("Premises Alterations" and LEED Requirements). Lessee shall comply with Lessor's reasonable requests for modification to the Lessee's planned alterations. Proposed changes in Lessee's signage

The Lessee shall maintain all non-structural elements of the premises throughout the Term of the Lease. The Lessee shall make all repairs to the interior of the Premises as may be required by its occupancy and its use of the Premises. Any equipment, fixtures or appliances installed by Lessee shall be the sole responsibility of Lessee. See also Article 16, Maintenance and Care of Property.

At the end of the Lease term, the Lessee shall be responsible for the removal of its personal property from the Premises. The space will be returned to the Lessor in the same condition as it was originally leased, ordinary wear and tear excepted.

Lessee shall be required, at its sole expense, to comply with all Lessor requests for temporary or permanent relocation of Lessee's property and equipment for Lessor's necessary building repairs and improvements. Lessor shall not interfere with Lessee's use and quiet enjoyment of the Premises.

Changes/alterations shall be accomplished in consultation with the State Historic Preservation Office ("SHPO") coordinated through GSA, with prior approval and acceptance by Lessor. Lessee shall submit complete architectural drawings and cost estimates for Lessor approval. Lessor shall approve or deny the change request within thirty (30) days. All interior changes of a non-structural nature and less than $25,000.00 in value will not require Lessor approval, but Lessee shall notify Lessor of its intentions no less than thirty (30) days prior to making such

U.S. GOVERNMENT LEASE OF
REAL PROPERTY

changes. All alterations performed in the facility shall not affect the historical integrity or appearance of the facility. No changes to the building exterior are permitted.

All alterations, additions and improvements ("Leasehold Improvements") constructed by Lessee or a sublessee during the term of this Lease and any extension of this Lease, and all salvage from such work, shall be the property of Lessee or any sublessee. Lessee and any sublessee shall have the right to remove any Leasehold Improvements at any time during the term of this Lease or any extension or renewal and for a period of 30 days after the termination of this Lease and, for such purpose, to enter upon the Property. Lessee's failure to do so after the expiration of such period of 30 days shall be considered abandonment; and the Leasehold Improvements shall become a part of the Property.

Should this Lease be terminated by Lessor due to default of Lessee or any sublessee in accordance with any provisions of this Lease, Lessee's or sublessee's personal property remaining on the leased premises, at Lessor's option, will become the property of Lessor.

10. BUILDING SERVICES
Lessee shall be responsible at Lessee's sole expense for providing all services to the entire Premises, to maintain the Premises, in first class condition as a Class A building unless otherwise stated in this Article. "Services" shall include, but not be limited to, utilities, janitorial services, Heating, Ventilating and Air Conditioning ("HVAC"), plumbing and electric, equipment, pest control, gas, water, cable or satellite television, telephone for voice or data, internet service provider, and snow removal.

Copies of all utility bills and evidence of payment shall be provided promptly, upon request, to the Contracting Officer of the Lessor. If necessary, Lessee also shall be responsible for paying the cost of designing, separately metering, distributing and connecting utilities to the Property. Meter installation plans shall be submitted to the Lessor for review and approval prior to installation.

B.      Janitorial Services – Lessee shall provide all janitorial, window washing and cleaning services and supplies for the Premises. Lessor may require a copy of Lessee's janitorial schedule for review and comment, which schedule must identify the scope and frequency of the work. Lessee will provide restroom supplies, and will clean, maintain, and repair any restrooms in the private areas of the Premises.

C.      Heating, Ventilating and Air Conditioning ("HVAC"), Plumbing and Electric – Lessee shall furnish, repair, maintain and provide engineering for the HVAC, electrical, plumbing and all other mechanical equipment and systems that serve the Premises.

D.      Lighting – Lessee shall provide replacement lamps and tubes for all fixtures in and on the Premises, and make all necessary repairs to light fixtures on or in the Premises throughout the term of this Lease.

E.      Lessee shall be responsible for rodent, insect, and other pest control within the Premises, and shall take all reasonable steps to ensure that all other areas of the Premises are not affected by problems with rodents, insects or other pests originating in the Premises. In an effort to maximize the effectiveness of Lessor's and Lessee's pest control programs, to the greatest extent practicable, Lessor's and Lessee's pest control activities will be coordinated. At

U.S. GOVERNMENT LEASE OF
REAL PROPERTY

the request of Lessor, Lessee will provide information concerning the pesticides and chemicals used in the control process. Lessor has the right to deny the use of certain pesticides and chemicals which it considers to be detrimental to the health and/or safety of the building's visitors and occupants.

F.      Trash and Snow Removal - Lessee shall be responsible for collecting all trash and recyclable materials from the Premises and delivering such materials to the location(s) within the Property designated by the Lessor for collection of these materials. Lessor will be responsible for removing the trash and recyclable materials from the building. Lessee shall be responsible for snow removal from entrance-way(s).

$G_{\pi}$ All interior repairs and maintenance of a non-structural nature and less than $25,000.00 in value will not require Lessor approval, but Lessee shall notify Lessor of its intentions no less than thirty (30) days prior to making such repairs and maintenance.

11. KEYS
Lessor reserves the right to retain at all times, and to use in appropriate instances, keys to all doors within and into the Premises.

12. INSURANCE
INSURANCE PROVISIONS Insurance policies shall, when possible, be carried with one insurance company. Lessee shall take out, pay for and maintain during the performance of the term of the Lease, through companies and agencies approved by Lessor and authorized to do business in the State of Illinois, the following insurance:

A.COMMERCIAL GENERAL LIABILITY INSURANCE ("CGL") with coverage for Property, Premises, third party property damage, continuity of operations, personal and advertising injury, products, and contractual liability with combined single limits of liability of not less than $4,000,000.00 for bodily injury and property damage per occurrence, with Lessor named as an "Additional Insured" on the CGL policy; and

B.WORKERS' COMPENSATION AND EMPLOYERS' LIABILITY INSURANCE
Workers' Compensation Insurance with statutory benefits and limits which shall fully comply with all state requirements applying to this insurance, and which shall contain a waiver of subrogation in favor of Lessor; and Employers' Liability Insurance with limits of not less than $1,000,000 per accident and disease.

C.Business Interruption Insurance sufficient to cover the payment of six month's rental.

EVIDENCE OF INSURANCE Before the Lease commences, Lessee shall forward to GSA Contracting Officer at the address set forth in the notice section of this Lease, a Certificate of Insurance or memorandum of insurance, with Lessor named as an "Additional Insured", evidencing that all required insurance is in force, and executed by an authorized representative of the insurance company.

OTHER INSURANCE PROVISIONS All insurance required under this Lease shall provide that it shall not be materially changed or canceled without at least thirty (30) days prior written notice to Lessor, and shall be primary and non-contributory.

U.S. GOVERNMENT LEASE OF
REAL PROPERTY

Approval by Lessor of insurance policies shall not relieve Lessee of responsibility hereunder, including, but not limited to, claims in excess of limits and coverage described above.

SUBCONTRACTOR'S INSURANCE. Lessee hereby certifies to Lessor that it will obtain similar certificates or memorandum of insurance from each of its subcontractors before their work commences on the Property. Each subcontractor must be covered by insurance of the same character and in the same amounts as that covering Lessee.

13. STATE OR LOCAL TAX
In the event that a state or local tax is imposed upon the occupancy, use, valuable possession, or valuable leasehold interest of or in the real property hereby leased, the obligation for the payment of the tax will be wholly that of the Lessee. However, Lessor is and will remain the owner of the Property which is the subject of this leasehold. As owner, the United States of America will remain responsible for all matters relating to a state or local assessment of real estate taxes on the underlying fee estate.

14. CONTINGENT FEES
Lessee warrants that no person or selling agency has been employed or retained to solicit or secure this Lease upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee. Lessee shall be responsible for the full price, or consideration, of the amount of such commission, percentage, brokerage, or contingent fee, if such agreement exists.

15. SECURITY DEPOSIT
This Lease is a successor to Tenant's lease with Klaff Realty dated September 17, 2001; and to GSA Lease Nos. GS-05B-33205 and GS-05B-33349. Tenant gave Klaff Realty a security deposit in the amount of $7,312.00 on September 17, 2001. Should Lessee comply with all the terms, covenants and conditions of this Lease, the said deposit shall be returned in full to Lessee at the end of the term of this Lease or upon its earlier termination.

16. MAINTENANCE AND CARE OF PROPERTY
Lessee shall, except as otherwise specified herein and except for damages resulting from the act or negligence of the Lessor, his agents or employees, maintain in good working order, repair and tenantable condition the Premises, including the building and any and all equipment, fixtures, appurtenances, exterior doors, and exterior windows, whether severable or nonseverable, furnished by the Lessor under this Lease. Lessee shall use reasonable care in its occupancy and use of the Premises. Upon the expiration or termination of this Lease, Lessee shall vacate the Premises, remove its personal property and Leasehold Improvements there from, in accordance with this Lease, and promptly yield and place the Lessor in peaceful possession of the Premises, free and clear of any liens, claims, or encumbrances caused by the Lessee or any of its contractors or agents, and in as good condition as the Premises existed at the commencement of this Lease, ordinary wear and tear excepted.

17. FAILURE TO PAY RENT OR ABANDONMENT
If Lessee or any sublessee should fail to pay the rent provided for by this Lease, or should abandon the Premises, Lessor, at its option and after giving Lessee thirty (30) days written notice to comply with the Lease requirements may declare this Lease ended and terminated and may reenter the Premises and remove all persons or things therefrom. Lessor reserves the right to terminate the Lease in its entirety if the Lessee or sublessee fails to make rental payments, or is late without due excuse in making rental payments, for two consecutive months.

U.S. GOVERNMENT LEASE OF
REAL PROPERTY

Should this Lease be terminated by Lessor due to default of Lessee or sublessee in accordance with any provisions of this Lease, Lessee's or sublessee's personal property remaining on the leased premises, at Lessor's option, will become the property of Lessor. Lessor acknowledges that Lessee shall have the right to close the business for a period not to exceed 30 days in order to retake the premises from the Franchisee. Lessee shall remain liable for all rental obligations during this period.

18. LESSEE EQUIPMENT

Lessee or sublessee shall provide or cause to be provided all equipment and fixtures needed for its intended use. Provision of fixtures and equipment, cleaning, maintenance, repairs, alterations, and replacements of all equipment in the Premises shall be the responsibility of the Lessee. Lessee maintenance shall be performed in accordance with the manufacturer's suggested schedule and recommendations, and shall be coordinated with the GSA Property Manager's schedule and recommendations.

Lessor agrees that all trade fixtures, machinery, equipment, furniture or other personal property of whatever kind and nature kept or installed in the Property by Lessee or any sublessees shall not become the property of Lessor or a part of the realty no matter how affixed to the property and may be removed by Lessee or any sublessee at any time and from time to time during the term of Lease and any extensions, to include a period of 30 days after termination of Lease and, for such purposes, to enter the Premises.

19. SUBLEASE

The following provision(s) shall not apply to an assignment/sublease authorized by the attached Rider.

Except with the prior written consent of Lessor, not to be unreasonably withheld or delayed, Lessee shall neither transfer nor assign this Lease or any of his rights hereunder, nor sublet the leased Premises or any part thereof or any property thereon nor grant any interest, privileges or license whatsoever in connection with this Lease.

20. SUBORDINATION AND ESTOPPELS

Lessor has the right, from time to time, to require Lessee or any sublessee to deliver to Lessor signed subordination and attornment agreements, affirming their acceptance of the relationship of Lessor, Lessee and sublessee and their rights and responsibilities thereunder, and confirming that, provided the sublessee is not in default beyond applicable cure periods, Lessor will not disturb sublessee's right of possession or other rights under the sublease. Lessor may also require, from time to time, the execution of an Estoppel Certificate by Lessee. In no event shall Lessor be required to submit Lessor's financial statement(s).

21. HOLD HARMLESS

Lessee agrees that it shall indemnify and save and keep harmless Lessor against any and all loss, cost, damage, claims, expenses or liability whatsoever, except those resulting from Lessor's gross negligence or intentional misconduct, because of injury or death of persons or damage to property of others incurred in the use or operation of the property or in connection with the occupancy thereof. Lessee shall promptly pay and settle, or cause to be removed, all liens, charges and encumbrances against any of the property which affect the rights of Lessor hereunder and will appear in and defend any action or proceeding purporting to affect the rights or powers of Lessor under this Lease and Lessee will pay all expenses incident thereto. Lessee reserves the right to bond over any such lien, charge or encumbrance.



U.S. GOVERNMENT LEASE OF
REAL PROPERTY

Nothing in this agreement shall abrogate Lessor's liability under the Federal Tort Claims Act (Title 28, U. S. Code Section 1346(b), 2671-2680) for damages, injuries or deaths which may occur due to the actions or omissions of its employees, officers or officials.

22. HAZARDOUS OR ANNOYING USE OF THE PROPERTY
Lessee agrees not to use the Property in any way, which in the reasonable judgment of the Lessor poses a hazard to the Lessor, or the Property in part or whole, nor shall Lessee use the Property so as to cause damage, annoyance, nuisance or inconvenience to the surrounding building occupants or others.

23. COMPLIANCE WITH PUBLIC BUILDINGS RULES AND REGULATIONS
Lessee, Lessee's agents, employees, invitees, customers or visitors, shall comply fully with all rules and regulations governing conduct on federal property as now posted or subsequently amended, which rules and regulations are attached hereto as Exhibit "A", provided said rules apply uniformly to all retail, non-federal Tenants of the building.

24. RIGHT OF INSPECTION
Lessor reserves the right to enter the Premises after 24 hours' notice, except in case of emergency, at all reasonable hours, to inspect, exhibit, or to make such repairs, additions or alterations as Lessor considers reasonably necessary for the safety, improvement, or preservation of the Property or any part thereof. The cost of any such work, which is the Lessee's responsibility, will be billed to the Lessee and promptly paid for by the Lessee to the Lessor. However, if the repair or alteration does not involve an emergency situation and is the responsibility of the Lessee, the Lessor shall first give the Lessee written notice of the need for such work, and shall request that the Lessee perform the work.  Lessee shall be allowed fifteen (15) days to respond to such notice before the Lessor proceeds with the work. Lessor will use best efforts not to interfere with Lessee's business operation.

25. FAILURE TO INSIST ON STRICT PERFORMANCE
No failure by either party to this Lease to insist upon the strict performance of any covenant, agreement, term or condition of this Lease or to exercise any right or remedy consequent upon a breach thereof, and no acceptance or payment of full or partial rent during the continuance of any such breach, shall constitute a waiver of such breach or of such covenant, agreement, term or condition. No covenant, agreement, term or condition of this Lease to be performed or complied with by either party to the Lease, and no breach thereof, shall be waived, altered or modified except by a written instrument executed by the other party to the Lease. No waiver of any breach shall affect or alter this Lease, but each and every covenant, agreement, term and condition of this Lease shall continue in full force and effect with respect to any other existing or subsequent breach thereof.

26. NOTICE IN WRITING
A notice, advice to, demand upon, or other communication under this Lease must be in writing, and shall be considered sufficiently given to the other party if hand delivered or, if mailed, evidenced by a certified mail return receipt, postage prepaid, or if sent by a reputable overnight carrier (eg. Federal Express, UPS, etc.) with signature requested acknowledging receipt.

INITIALS: ___ & ___
GOV'T      LESSEE

U.S. GOVERNMENT LEASE OF
REAL PROPERTY

A.     Notices or communications to Lessee shall be addressed as follows:

        Subway Real Estate, LLC.
        325 Sub Way
        Milford Connecticut 06461;

        and to the Development Agent:
        Subway Development Corp of Chicagoland
        5521 North Cumberland Avenue, Ste. 1102
        Chicago, Illinois 60656-4721.

B.     Notices or communications to Lessor shall be addressed to the undersigned Contracting Officer as follows:

        Retail Program Specialist
        U.S. General Services Administration
        PBS-Leasing Division
        230 South Dearborn Street, Suite 3600
        Chicago, Illinois 60604.

C.     Copies of all such notices shall be sent to:

        U.S. General Services Administration
        Property Manager – Dirksen Federal Courthouse
        219 S. Dearborn Street, Ste. 200
        Chicago, Illinois 60604.

From time to time either party may change its official address for such communications by notifying the other party in writing.

The undersigned Contracting Officer is Lessor's representative and is the only person who has authority to sign or amend the terms and conditions of this Lease or to otherwise obligate the Lessor.

See Rider for additional notice provisions.

27. FACILITIES NONDISCRIMINATION

A.     As used in this Article the term "facility" means the Property.

B.     Lessee agrees that it will not discriminate by segregation or otherwise against any person or persons because of race, color, religion, sex, or national origin in furnishing, or by refusing to furnish, to such person or persons the use of any facility, including any and all services, privileges, accommodations, and activities provided thereby. However, nothing herein shall require the Lessee to furnish to the general public, the use of any facility customarily furnished by Lessee solely to and for the use of tenants, their employees, customers, patients, clients, guests and invitees.

C.     It is agreed that the Lessee's noncompliance with the provisions of this Article shall constitute a material breach of this lease. In the event of such noncompliance, the Lessor may take appropriate action to enforce compliance or the Contracting Officer may, after giving the Lessee five (5) calendar days to correct the noncompliance, cancel this Lease upon the receipt of a recommendation to do so by the Department of Labor, Office of Federal Contract Compliance Programs ("OFCCP").

U.S. GOVERNMENT LEASE OF
REAL PROPERTY

28. RESTRICTIVE PROVISION
No member of or delegate to Congress, or resident Commissioner shall be admitted to any share or part of this Lease agreement, or to any benefit that may arise therefrom; but this provision shall not be construed to extend to any corporation or company if the agreement be for the general benefit of such corporation or company.

29. RECORDING
This Lease, and any modifications thereof or additions thereto, may be duly recorded by the Lessee by means of a Memorandum of Lease. Furthermore, if the State of Illinois requires the recording of this Lease the Lessee shall comply with all such statutory requirements. Any costs of such recordation and any and all revenue stamps which must legally be attached to any said papers shall be paid by the Lessee.

30. EXAMINATION OF RECORDS
The Lessee agrees that the Comptroller General of the United States, the Administrator of General Services, or any of their duly authorized representatives shall, until three (3) years after final rental/payment under this Lease, have access to all papers, records, books, ledgers, and other records of the Lessee that are pertinent to this Lease.

31. DISPUTES
A. This Lease is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613) ("Act").

B. Except as provided in the Act, all disputes arising under or relating to this contract shall be resolved under this clause.

C. "Claim", as used in this clause, means a written demand or written assertion by one of the parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of lease terms, or other relief arising under or relating to this contract. A claim arising under a lease, unlike a claim relating to that lease, is a claim that can be resolved under a lease clause that provides for the relief sought by the claimant. However, a written demand or written assertion by the Lessee seeking the payment of money exceeding $50,000 is not a claim under the Act until certified as required by subarticle (d)(2) below. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the Act. The submission may be converted to a claim under the Act, by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

D. 1) A claim by Lessee shall be made in writing and submitted to the Contracting Officer for a written decision. A claim by the Lessor against the Lessee shall be subject to a written decision by the Contracting Officer.

   2) For Lessee claims exceeding $50,000, Lessee shall submit with the claim a certification that

      a) the claim is made in good faith:

      b) Supporting data are accurate and complete to the best of the Lessee's knowledge and belief; and

INITIALS:  &
GOV'T          LESSEE

U.S. GOVERNMENT LEASE OF
REAL PROPERTY

          c)    the amount requested accurately reflects the Lease adjustment for which the Lessee believes the Lessor is liable.

   3)   a)    If Lessee is an individual, the certification shall be executed by that individual.

          b)    If Lessee is not an individual, the 5B; certification shall be executed by
       (1)    a senior company official in charge at the Lessee's plant or location involved; or

       (2)    an officer or general partner of the Lessee having overall responsibility for the conduct of the Lessee's affairs.

E.    For Lessee claims of $50,000 or less, the Contracting Office must, if requested in writing by the Lessee, render a decision within 60 days of the request. For Lessee certified claims over $50,000, the Contracting Officer must, within 60 days, decide the claim or notify the Lessee of the date by which the decision will be made.

F.    The Contracting Officer's decision shall be final unless the Lessee appeals or files a suit as provided in the Act.

G.    The Lessor shall pay interest on the amount found due and unpaid from (1) the date the Contracting Officer receives the claim (properly certified if required), or (2) the date payment otherwise would be due, if that date is later, until the date of payment. Simple interest on claims shall be paid at the rate, fixed by the Secretary of the Treasury as provided in the Act, which is applicable for each 6 month period as fixed by the Treasury Secretary during the tendency of the claim.

H.    Lessee shall proceed diligently with performance of this lease, pending final resolution of any request for relief, claim, appeal, or action arising under the Lease, and comply with any decision of the Contracting Officer.

## 32.  GRATUITIES

A.    The right of Lessee to proceed under this Lease may be terminated by written notice if, after notice and hearing, the GSA agency head or a designee determines that the Lessee, its agent, or another representative—

   1)    Offered or gave a gratuity (e.g., an entertainment or gift to an officer, official, or employee of the Lessor; and

   2)    Intended, by the gratuity, to obtain a contract or "favorable treatment" under a contract.

B.    The facts supporting this determination may be reviewed by any court having lawful Jurisdiction.

C.    If this contract is terminated under paragraph A above, the Lessor is entitled:

   1)    To pursue the same remedies as in a breach of the contract; and

   2)    The rights and remedies of the Lessor provided in this clause shall not be exclusive and are in addition to any other rights and remedies provided by law or under this contract.

LEASE NUMBER GS-05P-OIL00310         15
SEPT2016 VERSION    SUBWAY STORE 24454          INITIALS:                  &amp;
                                                      GOV'T       LESSEE

U.S. GOVERNMENT LEASE OF
REAL PROPERTY

**33.** ACCIDENT PREVENTION

A.  Lessee shall use its best efforts to provide and maintain work environments and procedures which will (1) safeguard the public and Lessor personnel, property, materials, supplies, and equipment exposed to Lessee operations and activities; (2) avoid interruptions of Lessor operations and delays in project completion dates; and (3) control costs in the performance of this contract.

B.  For these purposes, on contracts for construction or dismantling, demolition or removal of improvements, Lessee shall -

   1)  Provide appropriate safety barricades, signs and signal lights;

   2)  Comply with the standards issued by the Secretary of Labor at 29 CFR Part 1926 and 29 CFR Par 1910, and

C.  Whenever the Lessor becomes aware of any noncompliance with these requirements or any condition which poses a serious or imminent danger to the health or safety of the public or Lessor personnel, the Contracting Officer or the Contracting Officer's Representative shall notify the Lessee orally, with written confirmation, and request immediate initiation of corrective action. This notice, when delivered to Lessee or the Lessee's representative at the work site, shall be deemed sufficient notice of the noncompliance and that corrective action is required. After receiving the notice, the Lessee shall immediately take corrective action. If the Lessee fails or refuses to promptly take corrective action, the Contracting Officer may issue an order stopping all or part of the work until satisfactory corrective action has been taken. Lessee shall not be entitled to any equitable adjustment of the contract price or extension of the performance schedule on any stop work order issued under this clause.

**34.** OCCUPANT EMERGENCY PLAN

During the term of this Lease including any option periods, the Lessee agrees to comply with the occupant emergency plan established by the Lessor from time to time for the Property.

**35.** DENIAL OF ACCESS

At various times during the term of this Lease, it may be necessary for Lessor to exercise its discretion as a sovereign and as Property owner to close the Property or to prohibit or limit ingress to the Property, either during or after normal working hours. If such action becomes necessary, Lessor is not responsible for any loss of income arising out of its decision to close or limit access to the Property. Furthermore, Lessor is not liable for any property damage to Lessee property that may arise out of any protests, demonstrations, civil disturbances, or vandalism directed at Lessor, its buildings or its personnel. Notwithstanding the above, if the building is closed by Lessor for more than two (2) consecutive business days during which the Lessee would otherwise be open for business, Lessee will not be required to pay rent to Lessor for the number of <u>calendar days</u> beyond the second (2nd) business day that the building remains closed. However, Lessee shall continue to be responsible for the cost of all utility consumption for the Property without regard to the fact that the building is not open for business.

**36.** OUTDOOR SEATING, PARKING, DELIVERIES, SIGNAGE OR OTHER USE

In the absence of the express written consent of Lessor, the Lessee does not have the right to use and/or occupy any outdoor area(s) adjacent to the Property. There are no parking facilities related to Property. Deliveries to property shall be made by use of publicly accessible streets

U.S. GOVERNMENT LEASE OF
REAL PROPERTY

and alley-ways; deliveries shall be made using Lessor-designated areas of the building. Pending Lessor review of proposed exterior elevations and subsequent approval, Lessee shall be permitted to install its customary signage on the interior and exterior of the building. Lessee shall be permitted to install one forward facing sign above entrance to Premises, which conforms to Lessor's Retail Signage Program for the building and subject to GSA and State Historic Preservation Office approval. Lessor shall determine what information the Lessee will be required to submit so that the Lessor can properly evaluate the request.

Lessee shall not paint, display, inscribe or affix any sign, picture, advertisement, notice, lettering or direction or install any lights on any part of the outside or inside of the building, other than the Premises, and then not on any part of the inside of the Premises which can be seen from outside the Premises, except as approved by Lessor in writing.

## 37. FURTHER RESTRICTIONS ON USE OF SPACE
The Property cannot be used for the purpose of overnight habitation. The Property cannot be used to conduct meetings, seminars, disseminate information, for any political or religious purpose, or for other purposes which could be considered detrimental, demeaning or embarrassing to the Lessor.

Lessee shall not obstruct or place objects on or in sidewalks, entrances, passages, courts, corridors, vestibules, halls, elevators and stairways in and about the Building. Lessee shall not place objects against glass partitions or doors or windows or adjacent to any open common space which would be unsightly from the Building corridors or from the exterior of the Building.

Tenant shall not use any draperies or other window coverings instead of or in addition to the Building standard window coverings designated and approved by Lessor for exclusive use throughout the Building.

## 38. HANDICAPPED FACILITIES
Lessee shall comply with the standards prescribed by the Uniform Federal Accessibility Standards ("UFAS") in the design and construction of all improvements.

## 39. SECURITY
Lessee shall provide its own security. For the purpose of administering the security provisions contained in this Article, from time to time, the Contracting Officer will designate a Contracting Officer's Representative ("COR"). The current COR is Ms. Stacia Davis, Property Manager, Dirksen Federal Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, (312) 353-9239 (cell 312-505-3899).

A.     <u>Reporting of Incidents</u>. The Chicago Police Department (CPD) has jurisdiction over this Property and their 911 services should be utilized without hesitation. As soon as practicable, after first informing the CPD, the Lessee is required to report all criminal activities, security breaches, disturbances, violations of the alcoholic beverage restrictions contained in this Lease, and other extraordinary incidents or circumstances (such as accidents or injuries) to the Federal Protective Service MegaCenter. The current phone number for the MegaCenter is (877) 437-7411. Lessee shall also notify the COR. If the COR is unavailable, Lessee shall contact the Contracting Officer.

B.     <u>Security Equipment</u>. Throughout the term of this Lease, Lessor reserves the right, at its option and expense, to install whatever security equipment it deems as being necessary

LEASE NUMBER GS-05P-OIL00310       17
SEPT2016 VERSION     SUBWAY STORE 24454          INITIALS: _____ & _____
                                                   GOV'T     LESSEE

U.S. GOVERNMENT LEASE OF
REAL PROPERTY

to maintain the security of the Property and/or the area surrounding area, provided Lessee's business operation will not be adversely affected. Lessor shall obtain prior approval from Lessee prior to the implementation of such security equipment, which approval shall not be unreasonably withheld by Lessee.

C.   <u>Duress Alarm</u>. The existence of alarm systems on or in the Premises shall be verified with the Contracting Officer. The installation of alarms systems after the date of this Lease shall be at Lessee's sole expense, and upon the approval of Contracting Officer, whose approval shall not be unreasonably withheld.

D.   <u>Standards of Conduct</u> - Lessee shall be responsible for maintaining satisfactory standards of employee competency, conduct, appearance and integrity, and shall be responsible for taking such disciplinary action with respect to its employees as may be necessary.

E.   Lessee may be required to submit, for Lessor's review and approval, a security plan.

40. DAMAGE BY FIRE OR OTHER CASUALTY

A.   <u>Total Destruction</u>
If the Property is completely destroyed by fire or other casualty, this Lease shall immediately terminate.

B.   <u>Partial Destruction</u>
In the event of partial destruction or damage to the Premises so as to render the Premises or a portion thereof untenantable, as reasonably determined by the Lessor in its sole discretion, Lessee shall repair or restore the Premises to a tenantable condition within a reasonable time considering the nature and extent of the partial destruction or damage, but in no event shall the period to repair or restore exceed 180 days from the date of occurrence of the destruction or damage. If the Lessee fails to repair or restore the Premises within such time or fails to diligently pursue such repair or restoration, then the Lessor may, by written notice, terminate this Lease in addition to any other remedies which may be available to the Lessor at law. Within thirty (30) days of the partial destruction or damage to the Premises, Lessee shall provide the Lessor with its schedule and plans for accomplishing the repair or restoration. The Lessor shall have the right to review and approve such schedule and plans for repair or restoration of the Premises, with the Lessor's approval not to be unreasonably withheld, conditioned or delayed.

41. ENCUMBRANCES PROHIBITED

Lessee shall not engage in any financing or other transaction creating any lien upon the Property or upon the Lessee's leasehold estate therein and any such action shall be deemed a default under this Lease.

42. CHANGES

The Contracting Officer may, during the term of this Lease, add clauses which are required by law, Federal Regulation, or federal policy. Nothing in this article shall be construed to allow the Contracting Officer to make changes to the term of this Lease, the rent, or any other substantive term or condition involving the business aspects of this Lease.

U.S. GOVERNMENT LEASE OF
REAL PROPERTY

### 43. DEFAULT, COVENANT TO OPERATE, ABANDONMENT

Lessor may, by written notice of default to the Lessee, terminate this Lease if the Lessee materially fails to perform any of the provisions of this Lease and does not make all reasonable efforts to cure such failure within a period of thirty (30) days (or such longer period as the Contracting Officer may authorize in writing) after receipt of written notice from the Contracting Officer specifying such failure.

If the Lessee should abandon the Premises, except for repair, remodeling, fire or other casualty, or should cease to operate as in accordance with Article 1, USE, of this Lease, Lessor, at its option and after giving Lessee five (5) days written notice to comply with the Lease requirements, may: (a) seek a determination of default pursuant to the requirements under SECTION 41 U.S.C. 601-613 of the Contract Disputes Act of 1978 and if and then declare this Lease ended and terminated and may reenter the Premises and remove all persons or things there from; and (b) on authority hereby granted the Lessor by Lessee to dispose of such personal property left in the Premises as deemed in the best interest of Lessor, and Lessee shall be liable for such actual and reasonable damages or reasonable costs as Lessor may incur to dispose of such property. Landlord acknowledges that Tenant shall have the right to close the business temporarily in order to retake the premises from the Franchisee.

If this Lease is terminated pursuant to a determination under Section 41 U.S.C. 601-613 of the Contract Disputes Act of 1978 for default or is otherwise terminated in accordance with any other provision of this Lease, the Lessor, in addition to any other rights provided in this Article, may require the Lessee to deliver to the Lessor, in the manner and to the extent directed by Contracting Officer, the Premises and any of the completed or partially completed improvements without any compensation of the Lessee. Furthermore, Lessee's personal property remaining on the leased premises after Lessor regains legal possession of the Premises, at Lessor's option, will become the property of Lessor, and all future outstanding rent payments, required for that period as defined in Article 3, RENT, become due and payable. See Rider for additional default provisions.

### 44. SAFEGUARDING AND DISSEMINATION OF SENSITIVE BUT UNCLASSIFIED (SBU) BUILDING INFORMATION

This clause applies to all recipients of SBU building information, including offerors, bidders, awardees, contractors, subcontractors, *lessees*, suppliers, and manufacturers.

A. Marking SBU. Documents that contain building information must be reviewed by GSA to identify any SBU content before the original or any copies are disseminated to any other parties. If SBU content is identified, the contracting officer or the Contracting Officer's Representative (COR) may direct the lessee to imprint or affix SBU document markings to the original documents and all copies before any dissemination.

B. Authorized recipients. Building information considered SBU must be protected with access strictly controlled and limited to those individuals having a need to know such information. Those with a need to know may include Federal, State, and local government entities, and nongovernment entities engaged in the conduct of business on behalf of or with GSA or lessee. Nongovernment entities may include architects, engineers, consultants, contractors, subcontractors, suppliers, and others submitting an offer or bid to the lessee or performing work on behalf of the lessee. Lessees must provide SBU building information when needed for the performance of official Federal, State, and local government functions, such as for code compliance reviews and for the issuance of building permits. Public safety entities such as fire and utility departments may require access to SBU building information on a need to

U.S. GOVERNMENT LEASE OF
REAL PROPERTY

know basis. This clause must not prevent or encumber the dissemination of SBU building information to public safety entities.

C.      Dissemination of SBU building information:

1) By electronic transmission. Electronic transmission of SBU information outside of the GSA firewall and network must use session (or alternatively file encryption). Sessions (or files) must be encrypted with an approved NIST algorithm, such as Advanced Encryption Standard (AES) or Triple Data Encryption Standard (3DES), in accordance with Federal Information Processing Standards Publication (FIPS PUB) 140-2, Security Requirements for Cryptographic Modules. Encryption tools that meet FIPS 140-2 are referenced on the NIST web page found at the following   URL:   http://csrc.nist.gov/groups/STM/cmvp/documents/140-1/1401vend.htm   .   All encryption products used to satisfy the FIPS 140-2 requirement should have a validation certificate        that        can        be        verified        at        the        following        URL: http://csrc.nist.gov/groups/STM/cmvp/validation.html#02. (Not all vendors of security products that claim conformance with FIPS 140-2 have validation certificates.) Lessee must provide SBU building information only to authorized representatives of State, Federal, and local government entities and firms currently registered as "active" in the Central Contractor Registration (CCR) database at www.ccr.gov that have a need to know such information. If a contractor and/or subcontractor is not registered in the CCR and has a need to possess SBU building information, the contractor and/or subcontractor shall provide to the Lessee its DUNS number or its tax ID number and a copy of its business license.

2)  By nonelectronic form or on portable electronic data storage devices. Portable electronic data storage devices include but are not limited to CDs, DVDs, and USB drives. Nonelectronic forms of SBU building information include paper documents.

(a)  By mail. Utilize only methods of shipping that provide services for monitoring receipt such as track and confirm, proof of delivery, signature confirmation, or return receipt.

(b) In person. Lessee must provide SBU building information only to authorized representatives of State, Federal, and local government entities and firms currently registered as "active" in the CCR database that have a need to know such information. If a contractor and/or subcontractor is not registered in the CCR and has a need to possess SBU building information, the contractor and/or subcontractor shall provide to the Lessee its DUNS number or its tax ID number and a copy of its business license.

3)  Record keeping. Lessee must maintain a list of the State, Federal, and local government entities and the firms to which SBU is disseminated under sections C1 and C2 of this clause. This list must include, at a minimum, the name of the State, Federal, or local government entity or firm to which SBU has been disseminated; the name of the individual at the entity or firm who is responsible for protecting the SBU building information, with access strictly controlled and limited to those individuals having a need to know such information; contact information for the named individual; and a description of the SBU building information provided. Once work is completed, the lessee must collect all lists maintained in accordance with this clause, including those maintained by any contractors and/or subcontractors and/or suppliers, and submit them to the contracting officer or the COR.

INITIALS  &
GOV'T                    LESSEE

U.S. GOVERNMENT LEASE OF
REAL PROPERTY

D. Retaining SBU documents. SBU building information (both electronic and paper formats) must be protected, with access strictly controlled and limited to those individuals having a need to know such information.

E. Destroying SBU building information. SBU building information must be destroyed such that the marked information is rendered unreadable and incapable of being restored, *or returned to the contracting officer or the COR*, when no longer needed, in accordance with guidelines provided for media sanitization within Appendix A of NIST Special Publication 800-88, Guidelines for Media Sanitization, available at http://csrc.nist.gov/publications/nistpubs/800-88/NISTSP800-88_rev1.pdf. *If SBU building information is not returned to the contracting officer or the COR,* examples of acceptable destruction methods for SBU building information are burning or shredding hardcopy; physically destroying portable electronic storage devices such as CDs, DVDs, and USB drives; deleting and removing files from electronic recycling bins; and removing material from computer hard drives using a permanent-erase utility such as bit wiping software or disk crushers.

F. Notice of disposal. The lessee must notify the Contracting Officer or the COR that all SBU building information has been destroyed, *or returned to the Contracting Officer or the COR,* by the lessee and its contractors and/or subcontractors and/or suppliers in accordance with section E of this clause, with the exception of the Lessee's record copy.

G. Incidents. All improper disclosures of SBU building information must be immediately reported to the contracting Officer at US General Services Administration; PBS, Real Estate Division; 230 South Dearborn Street, Suite 3300; Chicago, IL 60604.

H. Contracts and Subcontracts. The Lessee must insert the substance of this clause in all contracts and subcontracts.

<u>Examples of Sensitive But Unclassified Building Information</u>
The following are examples of SBU building information and nonsensitive information:
1. SBU building information may be contained in any document (including drawings, specifications, virtual modeling, reports, studies, analyses) with information pertaining to:

a. Location and details of secure functions or space in a building. Examples: Judges' parking, chambers, and libraries; prisoner or judges' secure circulation paths or routes (both vertical and horizontal); secure elevator locations; detention or holding cells; sally ports; security areas; child care centers; and major computer processing areas or other client-sensitive processing and communications areas (such as major photo or computer facilities).

b. Location and details of secure functions or secure space. Examples: Heating, ventilation, air conditioning (HVAC); information technology (IT) systems; air intake vents; water sources; gas lines; plumbing lines; building automation systems; power distribution systems; telephone and cable distribution systems; emergency generation equipment; uninterrupted power sources (UPS); security and fire alarm systems; and routes and annunciation panels.

c. Location and type of structural framing for the building, including any information regarding structural analysis. Examples: Progressive collapse; seismic; building security; blast mitigation; counterterrorism methods taken to protect the occupants and the building; risk assessments

INITIALS: 
GOV'T        &        LESSEE

U.S. GOVERNMENT LEASE OF
REAL PROPERTY

and information regarding security systems or strategies of any kind (examples: camera locations; and nonpublic security guard posts (i.e., number, location, operations)).

2. Nonsensitive information. Any document (including drawings, specifications, virtual modeling, reports, studies, analyses) that does not contain information considered a security risk, or in which specific SBU building information, as identified above, has been redacted before release or presentation to the public, is not SBU. Examples include: Interior and exterior photographs limited to publicly accessible space or those that have been cleared for publication by GSA or the agency responsible for the space; models; building elevations; sketches, tentatives, renderings, conceptual and space-planning drawings, floor plans or layouts; building footprint and massing plans; and building drawings with SBU information redacted or shown as generic space.

45. INVALIDITY OF PARTICULAR PROVISIONS
If any provision of this Lease or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of the Lease, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby; and each provision of this Lease shall be valid and enforceable to the fullest extent permitted by law.

46. SINGULAR/PLURAL
The singular shall include the plural; the plural shall include the singular; and the use of any gender shall refer to any other gender, all where applicable.

47. CAPTIONS
The captions of this Lease are for convenience and reference only and in no way define, limit or describe the scope or intent of this Lease.

48. CAPITALIZATION OF TERMS
The parties acknowledge that the use of capitalization with regard to certain terms is inconsistent in this Lease document. Therefore, the capitalization of terms or the non-capitalization of those same terms, throughout this Lease, shall not be interpreted as changing or impacting on the intended meaning of those terms.

49. COVENANT OF TITLE AND QUIET ENJOYMENT
Lessor covenants that it is well seized of and has good title to the Property.

50. OTHER
Local operator/sublessee (Fazal Development Network) or its successor interest agrees to join and maintain membership with the sole source provider of the State Street Special Service Area Commission (Commission), established to provide certain special services in Special Service Area (SSA) Number 1-2015 (successor SSA to Special Service Area Number 1) as set forth in City of Chicago ordinance 2015-8875. Current sole source provider is the Chicago Loop Alliance. The membership fee(s) shall be payable directly the provider (currently the Chicago Loop Alliance). Evidence of membership shall be copy of paid receipt or other acknowledgement of payment.

INITIALS:  &
GOV'T          LESSEE

U.S. GOVERNMENT LEASE OF
REAL PROPERTY

51.   ADDITIONAL DOCUMENTS
The following documents are incorporated by reference into this lease:

EXHIBIT A      Floor Plan ......................................................................................24
EXHIBIT B      Rules and Regulations Governing Conduct on Federal Property ....................... 25
EXHIBIT C      Premises Alterations ............................................................... 26
EXHIBIT D      LEED Requirements ................................................................ 27
Rider               Rider………………………………………………………………………38

IN WITNESS WHEREOF, the parties hereto have signed and sealed their presents on the date
indicated below:

Executed this _               day of _                                              , 2017

LESSEE: SUBWAY REAL ESTATE, LLC

By: _      Steven G. Merrick
               Duly Authorized
                                        (Signature)                                    OCT 0 4 2017
                                                                                   (Signature)

IN PRESENCE OF:

By:_

               (Witness Signature)
               Paul D. Signo

Tax ID: 27-1156644
-------------------------------------------------------------------------------------------------------------------------

LESSOR:  UNITED STATES OF AMERICA, acting by the GENERAL SERVICES
ADMINISTRATION

By:  _                       Thomas Walsh

Title:  LEASE CONTRACTING OFFICER
US General Services Administration; PBS-Real Estate Division
230 South Dearborn Street, Suite 3300; Chicago, Illinois 60604

Executed this _   11th    day of _  October                          , 2017

U.S. GOVERNMENT LEASE OF
REAL PROPERTY
No. GS-05P-OIL0310

## Exhibit A - Floor Plan



INITIALS:  & 
GOV'T          LESSEE

U.S. GOVERNMENT LEASE OF
REAL PROPERTY
No. GS-05P-OIL0310

EXHIBIT B - Rules and Regulations Governing Conduct on Federal Property



**U.S. General Services Administration**

# Rules and Regulations
# Governing Conduct on Federal Property

November, 2005

**Federal Management Regulation**
**Title 41, Code of Federal Regulations, Part 102-74, Subpart C**

**Applicability (41 CFR 102-74.365).** The rules in this subpart apply to all property under the authority of GSA and to all persons entering in or on such property. Each occupant agency shall be responsible for the observance of these rules and regulations. Federal agencies must post the notice in the Appendix to this part at each public entrance to each Federal facility.

**Inspection (41 CFR 102-74.370).** Federal agencies may, at their discretion, inspect packages, briefcases and other containers in the immediate possession of visitors, employees or other persons arriving on, working at, visiting, or departing from Federal property. Federal agencies may conduct a full search of a person and the vehicle the person is driving or occupying upon his or her arrest.

**Admission to Property (41 CFR 102-74.375).** Federal agencies must:

(a) Except as otherwise permitted, close property to the public during other than normal working hours. In those instances where a Federal agency has approved the after-normal-working hours use of buildings, or portions thereof for activities authorized by subpart D of this part, Federal agencies must not close the property or affected portions thereof, to the public;

(b) Close property to the public during working hours only when situations require this action to ensure the orderly conduct of Government business. The designated official under the Occupant Emergency Program may make such decision only after consultation with the buildings manager and the highest ranking representative of the law enforcement organization responsible for protection of the property or the area. The designated official is defined in Sec. 102-71.20 of this chapter as the highest ranking official of the primary occupant agency or the alternate highest ranking official or designee selected by mutual agreement by other occupant agency officials; and

(c) When property or a portion thereof is closed to the public, restrict admission to the property to authorized persons who must register upon entry to the property and must, when requested, display Government or other identifying credentials to Federal police officers or other authorized individuals when entering, leaving or while on the property. Failure to comply with any of the applicable provisions is a violation of these regulations.

**Preservation of Property (41 CFR 102-74.380).** All persons entering in or on Federal property are prohibited from:

(a) Improperly disposing of rubbish on property;
(b) Willfully destroying or damaging property;
(c) Stealing property;
(d) Creating any hazard on property to persons or things; or
(e) Throwing articles of any kind from or at a building or climbing upon statues, fountains or any part of the building.

**Conformity with Signs and Directions (41 CFR 102-74.385).** Persons in and on property must at all times comply with official signs of a prohibitory, regulatory or directory nature and with the lawful direction of Federal police officers and other authorized individuals.

**Disturbances (41 CFR 102-74.390).** All persons entering in or on Federal property are prohibited from loitering, exhibiting disorderly conduct or exhibiting other conduct on property that:

(a) Creates loud or unusual noise or a nuisance;
(b) Unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots;
(c) Otherwise impedes or disrupts the performance of official duties by Government employees; or
(d) Prevents the general public from obtaining the administrative services provided on the property in a timely manner.

**Gambling (41 CFR 102-74.395).** (a) Except for the vending or exchange of chances by licensed blind operators of vending facilities for any lottery set forth in a State law and authorized by section 2(a)(5) of the Randolph-Sheppard Act (20 U.S.C. 107 et seq.), all persons entering in or on Federal property are prohibited from:

(1) Participating in games for money or other personal property;
(2) Operating gambling devices;
(3) Conducting a lottery or pool; or
(4) Selling or purchasing numbers tickets.

(b) This provision is not intended to prohibit prize drawings for personal property at otherwise permitted functions on Federal property, provided that the game or drawing does not constitute gambling per se. Gambling per se means a game of chance where the participant risks something of value for the chance to gain or win a prize.

**Narcotics and Other Drugs (41 CFR 102-74.400).** Except in cases where the drug is being used as prescribed for a patient by a licensed physician, all persons entering in or on Federal property are prohibited from:

(a) Being under the influence, using or possessing any narcotic drugs, hallucinogens, marijuana, barbiturates, or amphetamines; or
(b) Operating a motor vehicle on the property while under the influence of alcoholic beverages, narcotic drugs, hallucinogens, marijuana, barbiturates, or amphetamines.

**Alcoholic Beverages (41 CFR 102-74.405).** Except where the head of the responsible agency or his or her designee has granted an exemption in writing for the appropriate official use of alcoholic beverages, all persons entering in or on Federal property are prohibited from being under the influence or using alcoholic beverages. The head of the responsible agency or his or her designee must provide a copy of all exemptions granted to the buildings manager and the highest ranking representative of the law enforcement organization, or other authorized officials, responsible for the security of the property.

**Soliciting, Vending and Debt Collection (41 CFR 102-74.410).** All persons entering in or on Federal property are prohibited from soliciting alms (money) and commercial or political donations, vending merchandise of all kinds, displaying or distributing commercial advertising, or collecting private debts, except for:

(a) National or local drives for funds for welfare, health or other purposes as authorized by 5 CFR part 950, entitled "Solicitation of Federal Civilian and Uniformed Service Personnel for Contributions to Private Voluntary Organizations," and sponsored or approved by the occupant agencies;
(b) Concessions or personal notices posted by employees on authorized bulletin boards;
(c) Solicitation of labor organization membership or dues authorized by occupant agencies under the Civil Service Reform Act of 1978 (Pub. L. 95– 454);
(d) Lessee, or its agents and employees, with respect to space leased for commercial, cultural, educational, or recreational use under 40 U.S.C. 581(h). Public areas of GSA-controlled property may be used for other activities in accordance with subpart D of this part;
(e) Collection of non-monetary items that are sponsored or approved by the occupant agencies; and
(f) Commercial activities sponsored by recognized Federal employee associations and on-site child care centers.

**Posting and Distributing Materials (41 CFR 102-74.415).** All persons entering in or on Federal property are prohibited from:

(a) Distributing free samples of tobacco products in or around Federal buildings, as mandated by Section 636 of Public Law 104-52;
(b) Posting or affixing materials, such as pamphlets, handbills, or flyers, on bulletin boards or elsewhere on GSA-controlled property, except as authorized in Sec. 102-74.410, or when these displays are conducted as part of authorized Government activities; and
(c) Distributing materials, such as pamphlets, handbills or flyers, unless conducted as part of authorized Government activities. This prohibition does not apply to public areas of the property as defined in Sec. 102-71.20 of this chapter. However, any person or organization proposing to distribute materials in a public area under this section must first obtain a permit from the building manager as specified in subpart D of this part. Any such person or organization must distribute materials only in accordance with the provisions of subpart D of this part. Failure to comply with those provisions is a violation of these regulations.

**Photographs for News, Advertising, or Commercial Purposes (41 CFR 102-74.420).** Except where security regulations, rules, orders, or directives apply or a Federal court order or rule prohibits it, persons entering in or on Federal property for the following purposes may take photographs:

(a) Space occupied by a tenant agency for non-commercial purposes only with the permission of the occupying agency concerned;
(b) Space occupied by a tenant agency for commercial purposes only with written permission of an authorized official of the occupying agency concerned; and
(c) Building entrances, lobbies, foyers, corridors, or auditoriums for news purposes.

**Dogs and Other Animals (41 CFR 102-74.425).** No person may bring dogs or other animals onto Federal property for other than official purposes. However, a disabled person may bring a seeing-eye dog, a guide dog, or other animal assisting or being trained to assist that individual.

**Breastfeeding (41 CFR 102-74.426).** Public Law 106–199, Section 629, Division F, Title VI (January 23, 2004), provides that a woman may breastfeed her child at any location in a Federal building or on Federal property, if the woman and her child are otherwise authorized to be present at the location.

**Vehicular and Pedestrian Traffic (41 CFR 102-74.430).** All vehicle drivers entering or while on Federal property:

(a) Must drive in a careful and safe manner at all times;
(b) Must comply with the signals and directions of Federal police officers or other authorized individuals;
(c) Must comply with all posted traffic signs;
(d) Must comply with any additional posted traffic directives approved by the GSA Regional Administrator, which will have the same force and effect as these regulations;
(e) Are prohibited from blocking entrances, driveways, walks, loading platforms, or fire hydrants; and
(f) Are prohibited from parking on Federal property without a permit. Parking without authority, parking in unauthorized locations or in locations reserved for other persons, or parking contrary to the direction of posted signs is prohibited. Vehicles parked in violation, where warning signs are posted, are subject to removal at the owner's risk and expense. Federal agencies may take as proof that a motor vehicle was parked in violation of these regulations or directives as prima facie evidence that the registered owner was responsible for the violation.

**Explosives (41 CFR 102-74.435).** No person entering or while on Federal property may carry or possess explosives, or items intended to be used to fabricate an explosive or incendiary device, either openly or concealed except for official purposes.

**Weapons (41 CFR 102-74.440).** Federal law prohibits the possession of firearms or other dangerous weapons in Federal facilities and Federal court facilities by all persons not specifically authorized by 18 U.S.C. 930. Violators will be subject to fine and/or imprisonment for periods up to five (5) years.

**Nondiscrimination (41 CFR 102-74.445).** Federal agencies must not discriminate by segregation or otherwise against any person or persons because of race, creed, religion, age, sex, color, disability, or national origin in furnishing or by refusing to furnish to such person or persons the use of any facility of a public nature, including all services, privileges, accommodations, and activities provided on the property.

**Penalties (41 CFR 102-74.450).** A person found guilty of violating any rule or regulation in this subpart while on any property under the charge and control of GSA shall be fined under title 18 of the United States Code, imprisoned for not more than 30 days, or both.

**Impact on Other Laws or Regulations (41 CFR 102-74.455).** No rule or regulation in this subpart may be construed to nullify any other Federal laws or regulations or any State and local laws and regulations applicable to any area in which the property is situated (40 U.S.C. 121(c)).

# WARNING
## WEAPONS PROHIBITED

Federal law prohibits the possession of firearms or other dangerous weapons in Federal facilities and Federal court facilities by all persons not specifically authorized by Title 18, United States Code, Section 930. Violators will be subject to fine and/or imprisonment for periods up to five (5) years.



U.S. GOVERNMENT LEASE OF REAL PROPERTY
No. GS-05P-OIL00310
## EXHIBIT C - PREMISES ALTERATIONS

1. Lessee, through its general contractor, or Construction Manager, shall construct and improve the Premises ("Lessee's Work"), at Lessee's expense, in accordance with certain plans and specifications prepared by Lessee and reviewed and approved by Lessor. Lessor has no obligation to improve, alter or remodel the Premises. Lessee's Work shall be completed in a good and workmanlike manner in accordance with applicable laws.
2. Lessee shall not perform any improvements or alterations on or about the Premises without Lessor's prior written consent.
3. Not less than ten (10) days prior to the date Lessee desires to apply for city permit, Lessee shall give a written request to Lessor and provide the following:
   a. A detailed scope and schedule for the work to be performed, to include:
      i. Scaled construction drawings, in CAD file format, in 1/8" = 1' format, separately detailing all proposed mechanical, electrical, plumbing, ceiling grid, floor loading and floor coring proposed for Premises. Drawings shall identify the Premises, architect and general contractor;
      ii. Contractor and trade specific safety and health plan;
      iii. Detailed cost analysis of proposed improvements in CSI format by trade;
      iv. Detailed schedule of each phase of Lessee Work, by contractor;
4. Not less than five (5) days prior to the date Lessee desires to commence Lessee's Work, Lessee shall provide the following to Lessor:
   a. Copies of all licenses and permits which may be required in the performance of Lessee's Work;
   b. Certificates of insurance indicating compliance with the insurance requirements of Lease;
   c. Performance and Labor materials bonds in an amount not less than the estimated total cost of improvements;
   d. Names, addresses and telephone numbers for all contractors, subcontractors and material suppliers who will perform Lessee's Work;
   e. Evidence of availability of funds sufficient to pay for all such Lessee's Work.
5. Lessee shall be responsible for any expenses incurred by Lessor due to inadequate cleanup by those performing Lessee's Work.
6. Lessee hereby agrees to indemnify Lessor and hold Lessor harmless from and against any and all claims, costs, expenses or liability arising from Lessee's Work and Lessee's, or his agents, design, construction and operation of any improvements in, on or about the Premises (including, without limitation, Lessee's failure to obtain any necessary permits, approvals or certificates from the applicable governmental authorities and/or actual reasonable attorneys' costs and fees, and court costs).
7. Preparation of the design and construction drawings for Lessee's Work shall be the responsibility of Lessee, and Lessee shall submit same to Lessor, for Lessor's written approval prior to Lessee's commencement of any work on or about the Premises. Lessor shall endeavor to respond to such working drawings with in thirty (30) business days. Lessor and Lessee shall then confer regarding any changes reasonably required by Lessor, Lessee shall cause to be made such changes as are mutually agreed to, and deliver revised construction drawings to Lessor within ten (10) business days. Lessor shall endeavor to confirm said changes and issue a written "Notice to Proceed" with Lessee's Work. Any further changes to Lessee's Work shall require Lessor's prior written consent.
8. Upon completion of Lessee's Work, Lessee shall provide to Lessor:
   a. An architect's certificate of final completion;
   b. Copies of all necessary government issued permits, including, but not limited to, a certificate of occupancy;
   c. Final lien waivers from all contractors, subcontractors and materialmen;
   d. Final "as-built" construction drawings, in CAD file format;
   e. Any other information or documentation reasonably requested by Lessor to evidence compliance with the above terms and conditions.
9. If Lessee shall fail to comply with any term, condition, provision or agreement hereunder, and if any such matter is not remedied or resolved within fifteen (15) days following written notice to Lessee, then, in addition to any other remedies granted Lessor under the Lease or available at law or equity, Lessor may elect, upon notice to Lessee, to:
   a. Discontinue all work hereunder, and Lessee's obligation to pay rent shall commence as if Business Commencement has been reached; or

Lessor may terminate this Lease effective immediately after Lessee receives notice thereof, without incurring any liability on account thereof. Such termination shall not affect Lessee's liability for any sums payable under this Lease.

INITIALS: 
GOV'T          & LESSEE

U.S. GOVERNMENT LEASE OF REAL PROPERTY
No. GS-05P-OIL00310
## Exhibit D
## Sustainable Requirements for Tenant Interior Construction

PART 1:  PURPOSE
11 Quincy Court is striving to achieve LEED Gold Certification under LEED-CS v3.0 (2009).
Improvements to the sustainable character of the building include:
• High-performance glazing / curtainwall upgrades to provide maximum daylight and views to
occupants.
• Extensive upgrades of base building mechanical, electrical, and plumbing systems.
• New elevator machines and cabs to provide fast, efficient service for tenants
• A daylight harvesting system for reducing lighting costs during daylight hours
• Automated shade systems to control heat gain and provide visual comfort for tenants
• Advanced lighting control systems
• New toilet rooms with high-efficiency fixtures and lighting

Future work to the building is required to comply with LEED-CI or CS, depending on the type of
alteration. The LEED-CI rating system is designed to complement the Core and Shell rating of the base
building. In many cases, the existing Core and Shell systems of 11 Quincy Court have been designed to
make LEED-CI certification as easy as possible.   For example, the DALI lighting control systems installed
throughout the building allow tenants to pursue LEED-CI credit EAc1.2 – Optimize Energy Performance –
Lighting Controls.  Tenants should download the most current version of LEED-CS v3.0 (2009) or LEED-CI
v3.0 (2009) from www.usgbc.org.

PART 2:  DEFINITIONS
Adhesives:  All gunnable, trowelable, liquid-applied, and aerosol adhesives, whether specified or not;
including flooring adhesives, resilient base adhesives, and pipe jointing adhesives.

Adsorptive Materials:  Gypsum board, acoustical ceiling tile and panels, carpet and carpet tile, fabrics,
fibrous insulation, and other similar products.

Clean:  Untreated and unpainted; not contaminated with oils, solvents, caulk, or the like. Contaminants:
Gases, vapors, regulated pollutants, airborne mold and mildew, and the like, as specified.

Construction and Demolition Waste:  Solid wastes typically including building materials, packaging,
trash, debris, and rubble resulting from construction, remodeling, repair and demolition operations.

Hazardous:  Exhibiting the characteristics of hazardous substances, i.e., ignitibility, corrosivity, toxicity or
reactivity.

Interior of Building:  Anywhere inside the exterior weather barrier.

Landlord or Owner or Building Owner:  Shall refer to the U.S General Services Administration (GSA).

INITIALS:  & 
GOV'T          LESSEE

U.S. GOVERNMENT LEASE OF REAL PROPERTY
No. GS-05P-OIL00310
## Exhibit D
## Sustainable Requirements for Tenant Interior Construction

Nonhazardous: Exhibiting none of the characteristics of hazardous substances, i.e., ignitibility, corrosivity, toxicity, or reactivity.

Nontoxic: Neither immediately poisonous to humans nor poisonous after a long period of exposure.

Particulates: Dust, dirt, and other airborne solid matter.

Recyclable: The ability of a product or material to be recovered at the end of its life cycle and remanufactured into a new product for reuse by others.

Recycle: To remove a waste material from the project site to another site for remanufacture into a new product for reuse by others.

Recycling: The process of sorting, cleansing, treating and reconstituting solid waste and other discarded materials for the purpose of using the altered form. Recycling does not include burning, incinerating, or thermally destroying waste.

Return: To give back reusable items or unused products to vendors for credit.

Reuse: To reuse a construction waste material in some manner on the project site.

Salvage: To remove a waste material from the project site to another site for resale or reuse by others.

Sealants: All gunnable, trowelable, and liquid-applied joint sealants and sealant primers, whether specified or not; including firestopping sealants and duct joint sealers.

Sediment: Soil and other debris that has been eroded and transported by storm or well production run-off water.

Source Separation: The act of keeping different types of waste materials separate beginning from the first time they become waste.

Tenant: Shall refer to any entity which leases, subleases or owns space within 11 Quincy Court other than the U.S. General Services Administration (GSA).

Toxic: Poisonous to humans either immediately or after a long period of exposure.

Trash: Any product or material unable to be reused, returned, recycled, or salvaged.

Waste: Extra material or material that has reached the end of its useful life in its intended use. Waste includes salvageable, returnable, recyclable, and reusable material.

Wet Work: Concrete, plaster, coatings, and other products that emit water vapor or volatile organic compounds during installation, drying, or curing.

INITIALS: ___ & ___
GOV'T        LESSEE

U.S. GOVERNMENT LEASE OF REAL PROPERTY
No. GS-05P-OIL00310

# Exhibit D
## Sustainable Requirements for Tenant Interior Construction

PART 3: CORE AND SHELL FEATURES
All interior construction and renovations within the building, regardless of the size of the improvements or location within the building, shall comply with the criteria outline hereafter which follows the LEED CS v3.0 (2009) and LEED CI v3.0 (2009) rating system. In all cases, refer to official LEED documentation for full credit descriptions and all requirements.

SUSTAINABLE SITES (SS):
SS Prerequisite 1 - Construction Activity Pollution Prevention:
1. As long as no work is done beyond the exterior face of the building, there are no additional requirements.

SS Credit 1 – Site Selection:
1. As long as no work is done beyond the exterior face of the building, there are no additional requirements.
SS Credit 2 – Development Density:
1. As long as no work is done beyond the exterior face of the building, there are no additional requirements.

SS Credit 4.1 - Alternative Transportation: Public Transportation Access:
1. As long as no work is done beyond the exterior face of the building, there are no additional requirements.

SS Credit 4.4 - Alternative Transportation: Parking Availability:
1. As long as no work is done beyond the exterior face of the building, there are no additional requirements.

SS Credit 5.1 – Site Development – Protect or Restore Habitat:
1. As long as no work is done beyond the exterior face of the building, there are no additional requirements.

SS Credit 5.2 – Site Development – Maximize Open Space:
1. As long as no work is done beyond the exterior face of the building, there are no additional requirements.

SS Credit 7.1 - Attempted - 1 point - Heat Island Effect: Non-Roof:
1. As long as no work is done beyond the exterior face of the building, there are no additional requirements.

SS Credit 7.2 - Heat Island Effect:
1. All patches to the roof shall be of the same material and finish as the existing roof with an emissivity of at least 0.9 when tested in accordance with ASTM 408.

SS Credit 8 – Light Pollution Reduction:
1. Any alterations to the building lighting should comply with LEED credit requirements. Exterior retail signage shall comply with ASHRAE 90.1-2007 for LZ4 zone as defined by IESNA RP-33.

U.S. GOVERNMENT LEASE OF REAL PROPERTY
No. GS-05P-OIL00310
## Exhibit D
## Sustainable Requirements for Tenant Interior Construction

WATER EFFICIENCY (WE):
WE Prerequisite 1 - Water Use Reduction:
1. Any alterations to tenant plumbing systems should comply with LEED credit requirements.

WE Credit 1.1 - Water Efficient Landscaping: No potable Water use or Irrigation:
1. As long as no modifications are made to the landscaping or green roof, there are no additional requirements.

WE Credit 3- Water Use Reduction, 35% Reduction:
1. Tenant must utilize plumbing fixtures with performance that exceeds EPAct 1992 flow rate requirements by 35%. Calculation for plumbing fixture performance reduction must be done according to LEED CS v3.0 2009 requirements. Project utilized the following plumbing fixtures to achieve this reduction. Tenant must utilize these plumbing fixtures or fixtures with equal or less water usage:
    a. *Toto TEL5GSC-10* lavatory faucet - 0.17 g/c flow rate
    b. *Toto TEU1UN* High Efficiency urinal - 0.125 g/f
    c. *Toto TET1LN32#CP* High efficiency flush valve - 1.28 g/f

ENERGY & ATMOSPHERE (EA):
EA Prerequisite 1 – Fundamental Building Systems Commissioning:
1. Refer to Enhanced Building Systems Commissioning requirements below.

EA Prerequisite 2 - Minimum Energy Performance:
1. Refer to EA Credit 1 - Optimize energy performance.

EA Prerequisite 3 - Fundamental Refrigerant Management:
1. No CFC-based refrigerants shall be used in any equipment.

EA Credit 1 - Optimize Energy Performance:
    1. The building envelope, HVAC, lighting, etc., have been designed to exceed ASHRAE 90.1 by 36% utilizing condensing boilers, highly efficient centrifugal chillers, variable speed drives and a high performance envelope. It is suggested to utilize parallel fan powered boxes for perimeter heating/cooling and cooling only VAVs on the interior. Demand control ventilation with co2 sensors in highly occupied spaces is also recommended. Occupancy sensors and efficient CFLs shall be considered for tenant lighting.
    2. Office Tenant HVAC, water heating and lighting designs must exceed the most recent version of ASHRAE 90.1 standards. Compliance must be performed by meeting/exceeding all of the mandatory provisions. Design must comply with the Prescriptive path or demonstration to the Owner and Cx Agent that the new space design will exceed the most recent version of ASHRAE 90.1 by at least 36%.
    3. First floor retail tenants must meet or exceed all ASHRAE 90.1-2007 requirements for HVAC, lighting and service water heating. Retail tenants may use 90.1-2007 compliant independent air cooled DX AC systems.

U.S. GOVERNMENT LEASE OF REAL PROPERTY
No. GS-05P-OIL00310
## Exhibit D
## Sustainable Requirements for Tenant Interior Construction

EA Credit 3 - Enhanced Building Systems Commissioning:

1. Commissioning performed by and under the supervision of an independent commissioning authority is required.

2. Tenant shall hire Owner's commissioning agent to perform commissioning.

3. The commissioning authority's responsibilities with regard to design phase review, review of Contractor's submittals, and post-occupancy review must be conducted in accordance with the base building commissioning scope and LEED requirements.

EA Credit 5.1 – Measurement and Verification – Base Building:

1. The building is currently being metered to achieve the measurement and verification credit. All lights, equipment, receptacles, etc should be connected to their correctly designated panels to ensure their usage is correctly tracked. Normal lighting shall be connected to the NH*B panel board, emergency lighting shall be connected to the LS*B panel board and fan powered boxes/receptacles shall be connected to the NL*B panel board (* denotes which floor tenant is occupying). The additional HVAC loads created by the new tenant will be reflected in the overall equipment usage. Tenant shall refer to the LEED EAcr5.2 tenant measurement and verification narrative for additional information.

EA Credit 5.2 – Measurement and Verification – Tenant:

1. The Tenant shall refer to the LEED EAcr5.2 tenant measurement and verification narrative for additional information. Retail tenants must utilize their own, separate electric utility meter.

MATERIALS & RESOURCES:

MR Prerequisite 1 - Storage & Collection of Recyclables:

1. Tenant shall provide provisions to collect recyclable waste conveniently within their space and shall sort and deposit recyclables in the main Trash / Recycling room at the service entrance on Jackson Blvd.

MR Credit 1 – Building Reuse:

1. As long as no work is done beyond the exterior face of the building, there are no additional requirements.

MR Credit 2 - Construction Waste Management:

1. During Construction of all improvements, at least 75% of all Construction debris shall be diverted from landfills.

2. Designate an on-site person or persons responsible for instructing workers and overseeing and documenting results of the Waste Management Plan.

3. Distribute copies of the Waste Management Plan to job site foreman, each subcontractor, Owner, Architect, and Property Manager.

4. Provide on-site instruction of appropriate separation, handling, and recycling, salvage, reuse, and return methods to be used by all parties at the appropriate stages of the project.

5. Discuss trash/waste management goals and issues at project meetings.
   a. Pre-bid meeting.
   b. Pre-construction meeting.
   c. Regular job-site meetings.

U.S. GOVERNMENT LEASE OF REAL PROPERTY
No. GS-05P-OIL00310
## Exhibit D
## Sustainable Requirements for Tenant Interior Construction

6. Provide specific facilities for separation and storage of materials for recycling, salvage, reuse, return, and trash disposal, for use by all contractors and installers.

a. Provide containers as required.

b. Provide materials for barriers and enclosures that are nonhazardous, recyclable, or reusable to the maximum extent possible; reuse project construction waste materials if possible.

c. Provide adequate space for pick-up and delivery and convenience to subcontractors.

d. Keep recycling and trash/waste bin areas neat and clean and clearly marked in order to avoid contamination of materials.

7. Hazardous Wastes: Separate, store, and dispose of hazardous wastes according to applicable regulations.

8. Recycling: Separate, store, protect, and handle at the site identified recyclable waste products in order to prevent contamination of materials and to maximize recyclability of identified materials. Arrange for timely pickups from the site or deliveries to recycling facility in order to prevent contamination of recyclable materials.

9. Reuse of Materials On-Site: Set aside, sort, and protect separated products in preparation for reuse.

10. Salvage: Set aside, sort, and protect products to be salvaged for reuse off-site.

MR Credit 4 - Recycled Content:

1. Provide products with recycled content such that the sum of post-consumer recycled content plus one-half of the post-industrial recycled content constitutes at least 10 percent of the total value of all products installed.

2. Qualifying products do not include plumbing, HVAC, electrical, or communications equipment, piping, conduit, ductwork, or wiring.

3. Calculations: Where information about recycled content is required to be submitted:

a. Determine percentage of post-consumer and post-industrial content separately, using the guidelines contained in Code of Federal Regulation 16 CFR 260.7(e).

b. Previously used, reused, refurbished, and salvaged products are not considered recycled.

c. Wood fabricated from timber abandoned in transit to original mill is considered reused, not recycled.

d. Determine percentage of recycled content of any item by dividing the weight of recycled content in the item by the total weight of all material in the item.

e. Determine value of recycled content of each item separately, by multiplying the content percentage by the value of the item.

4. LEED Submittals: State unit cost, post-consumer and post-industrial content percentages, quantity installed, total material cost, and total recycled content value; attach evidence of contents from either manufacturer or an independent agency.

5. Tenant is required to achieve this requirement through selection of products (materials and equipment) with recycled content meeting content levels required.

U.S. GOVERNMENT LEASE OF REAL PROPERTY
No. GS-05P-OIL00310
## Exhibit D
## Sustainable Requirements for Tenant Interior Construction

MR Credit 5 - Regional Materials:

    1. Provide materials amounting to a minimum of 20 percent of the total value of all materials that have been extracted, harvested, or recovered, as well as manufactured, within a radius of 500 miles from the project site.

    2. HVAC, electrical, plumbing, and equipment items are excluded from the definition of "materials."

MR Credit 6 – Certified Wood:

1. Wood-based materials include but are not limited to structural framing, dimension lumber, flooring, wood doors, finishes, and furnishings that are permanently installed in the project.

2. Wood and wood-based products not permanently installed in the project are not included in the definition.

3. Provide a minimum of 50 percent of all wood-based materials made of sustainably harvested wood.

4. Provide wood certified or labeled by an organization accredited by one of the following:

    a. The Forest Stewardship Council, The Principles for Natural Forest Management; for Canada visit http://www.fsccanada.org, for the USA visit http://www.fscus.org.

5. LEED Submittals: State unit cost of each wood-based item, quantity installed, quantity certified as sustainably harvested, total wood-based material cost, and total sustainably harvested value; provide letter of certification signed by supplier of each item, indicating compliance with the specified requirements and identifying the certifying organization.

    a. Include the certifying organization's certification numbers for each certified product, itemized on a line-item basis.

    b. Attach copies of invoices bearing the certifying organization's certification numbers

INDOOR ENVIRONMENTAL QUALITY:

IEQ Prerequisite 1- Minimum IAQ Performance:

1. Tenant design for ventilation shall meet minimum requirements of ASHRAE 62.1-2007.

IEQ Prerequisite 2 - Environmental Tobacco Smoke (ETS) Control:

1. Prohibit smoking in the building and within 15 feet of all entrances.

IEQ Credit 1 – Outside Air Delivery Monitoring:

    1. Permanent Carbon Dioxide ($CO2$) sensors must be installed in densely occupied spaces and connected to the building automation system. A densely occupied space is any space with a design occupant density greater than or equal to 25 people per 1,000 SF.

    2. All spaces with highly variable occupancy levels must have a means to automatically (through the building automation system) decrease $CO2$ levels, other spaces may be monitored and trended only. A highly variable occupancy is any densely occupied space where occupancy levels are likely to be "all-or-nothing" similar to classrooms, conference rooms, ballrooms, etc.

    3. Calculations for acceptable $CO2$ levels must be based on ASHRAE 62.1-2001, Appendix C. An outside $CO2$ sensor does not exist on this building so the comparison level for differential monitoring shall assume outside $CO2$ levels are 400 ppm.

INITIALS: _____ & _____
            GOV'T     LESSEE

U.S. GOVERNMENT LEASE OF REAL PROPERTY
No. GS-05P-OIL00310
## Exhibit D
## Sustainable Requirements for Tenant Interior Construction

4. The air handling unit is designed to bring in 18,000 CFM of outdoor air. The 2nd and 3rd floors (open for new tenants) are each provided with approximately 2500 CFM of outdoor air. The air to the space is delivered from overhead.

5. Retail tenants shall monitor outside air flow and provide independent $CO_2$ sensors for densely occupied spaces. These sensors are not required to connect to the main building BAS system but must meet all of the requirements of this credit.

IEQ Credit 3 - Construction Indoor Air Quality Management Plan:

1. The following construction procedures shall be met:

a. Prevent the absorption of moisture and humidity by:

1. by sequencing the delivery of adsorptive materials directly into the conditioned building after all wet work is completed and dry.

2. Delivery and storage of such materials in fully sealed moisture-impermeable packaging.

3. Provide sufficient ventilation for drying within reasonable time frame.

b. Ventilate enclosed areas to assist cure of materials, to dissipate humidity, and to prevent accumulation of dust, fumes, vapors, or gases.

c. Prevent movement of air from construction area to all occupied areas.

d. Execute work by methods to minimize raising dust from construction operations. Provide positive means to prevent air-borne dust from dispersing into atmosphere and over adjacent property.

e. HVAC equipment and supply air ductwork may be used for ventilation during construction:

1. Operate HVAC system on 100 percent outside air, with 1.5 air changes per hour, minimum.

2. Ensure that air filters are correctly installed prior to starting use; replace filters when they lose efficiency.

3. Do not use return air ductwork for ventilation.

4. Seal return air inlets or otherwise positively isolate return air system to prevent recirculation of air; provide alternate return air pathways.

f. Do not store construction materials or waste in mechanical or electrical rooms.

g. Prior to use of return air ductwork without intake filters clean up and remove dust and debris generated by construction activities.

1. Inspect duct intakes, return air grilles, and terminal units for dust.

2. Clean plenum spaces, including top sides of lay-in ceilings, outsides of ducts, tops of pipes and conduit.

3. Clean tops of doors and frames.

4. Clean mechanical and electrical rooms, including tops of pipes, ducts, and conduit, equipment, and supports.

5. Clean return plenums of air handling units.

6. Remove intake filters last, after cleaning is complete.

INITIALS: _____ & _____
GOV'T        LESSEE

U.S. GOVERNMENT LEASE OF REAL PROPERTY
No. GS-05P-OIL00310
## Exhibit D
## Sustainable Requirements for Tenant Interior Construction

h. Do not perform dusty or dirty work after starting use of return air ducts without intake filters.

i. Use other relevant recommendations of SMACNA IAQ Guideline for Occupied Buildings Under Construction for avoiding unnecessary contamination due to construction procedures.

j. Provide methods, means, and facilities to minimize noise produced by construction operations.

k. Provide methods, means, and facilities to prevent rodents, pests and insects from damaging the work or invading premises.

l. Provide methods, means, and facilities to prevent contamination of soil, water, and atmosphere from discharge of noxious, toxic substances, and pollutants produced by construction operations. Comply with federal, state, and local regulations.

IEQ Credit 4.1, Low-Emitting Materials – Adhesives and Sealants
1. Adhesives and Joint Sealants:

a. Provide only products having volatile organic compound (VOC) content not greater than required by South Coast Air Quality Management District Rule No.1168.

b. The following products shall comply with the specified VOC restrictions:

1. Firestopping sealants.

2. Architectural joint sealants.

3. Duct sealers and sealants.

4. Construction adhesives.

c. Provide evidence of compliance via a report of laboratory testing performed in accordance with requirements.

2. Aerosol Adhesives:

a. Provide only products having volatile organic compound (VOC) content not greater than required by GreenSeal GS-36.

b. Provide evidence of compliance via GreenSeal Certification.

IEQ Credit 4.2, Low-Emitting Materials – Paints and Coatings
1. Paints and Coatings:

a. Provide coatings that comply with the most stringent requirements specified in 40 CFR 59, Subpart D--National Volatile Organic Compound Emission Standards for Architectural Coatings.

b. Determination of VOC Content: Testing and calculation in accordance with 40 CFR 59, Subpart D (EPA Method 24), exclusive of colorants added to a tint base and water added at project site; or other method acceptable to authorities having jurisdiction.

c. Provide evidence of compliance via report of laboratory testing performed in accordance with requirements or published product data showing compliance with requirements.

U.S. GOVERNMENT LEASE OF REAL PROPERTY
No. GS-05P-OIL00310
## Exhibit D
## Sustainable Requirements for Tenant Interior Construction

IEQ Credit 4.3, Low-Emitting Materials – Flooring Systems:
2. Flooring Systems:

    a. Provide products having VOC content not greater than that required for CRI Green Label Plus certification.

    b. The following products shall comply with the specified VOC restrictions:

        1. Wood flooring, including hardwood, bamboo or cork products.

        2. Resilient flooring.

        3. Fluid-applied flooring.

        4. Carpet, carpet pad and carpet tile.

        5. Adhesives used in connection with flooring systems.

    c. Provide evidence of compliance via current Green Label Plus Certification or a report of laboratory testing performed in accordance with requirements.

IEQ Credit 4.4, Low-Emitting Materials – Composite Wood:
1. Composite Wood and Agrifiber Products:

    a. Provide products having no added urea-formaldehyde resins.

    b. The following products shall comply with the specified restriction:

        1. Particleboard

        2. Plywood

        3. Medium density fiberboard (MDF)

        4. Agrifiber products including wheatboard and strawboard

        5. Panel substrates

        6. Door cores

        7. Laminating Adhesives

    c. Provide evidence of compliance via published product data showing compliance with requirements or certification by manufacturer that product complies with requirements.

IEQ Credit 5, Indoor Chemical and Pollutant Source Control:
1. Employ permanent entryway systems at least 10 feet long in the direction of travel at regularly-used exterior entrances

2. Exhaust spaces where hazardous gases or chemicals may be present or used (e.g. garages, housekeeping and laundry areas, science laboratories, prep rooms, art rooms, shops of any kind, and copying and printing rooms) to create negative pressure with respect to adjacent spaces when the doors to the room are closed.

3. In mechanically ventilated buildings, install new air filtration media in regularly occupied areas prior to occupancy; these filters must provide a minimum efficiency reporting value (MERV) of 13 or higher.

4. Provide containment for appropriate disposal of hazardous liquid wastes in places where water and chemical concentrate mixing occurs.

5. See LEED CS and CI, version 2009 for additional requirements.

INITIALS: _____  &  _____
            GOV'T      LESSEE

U.S. GOVERNMENT LEASE OF REAL PROPERTY
No. GS-05P-OIL00310
## Exhibit D
## Sustainable Requirements for Tenant Interior Construction

IEQ Credit 6.1 Controllability of Systems – Lighting (CI credit)
1. Provide individual lighting controls for 90% (minimum) of the tenant space occupants to enable adjustments to suit individual task needs and preferences.

2. Provide lighting system controls for all shared multi-occupant spaces to enable adjustments that meet group needs and preferences.

3. The base building did not achieve this credit

IEQ Credit 6.2 Controllability of Systems – Thermal Comfort (CI credit)
1. Provide individual controls for 50% (minimum) of the tenant occupants to enable adjustment to suit individual needs and preferences.

2. Provide comfort system controls for all shard multi-occupant spaces to enable adjustments that meet group needs and preferences.

3. The base building did not achieve this credit; however the Building Automation system can be easily expanded to accommodate additional space sensors and controls if the tenant wishes to achieve this credit.

IEQ Credit 7 - Thermal Comfort: Design:
1. HVAC design must comply with ASHRAE Standard 55 for thermal comfort standards. Space temperature and humidity ranges must comply with the 5A climate zone.
2. The base building indoor air temperature target goal is between 72 and 75. Humidity levels in the summer will not exceed 50% and will be allowed to drop to 0% in the winter. Clothing insulation valves were assumed to fall between 0.7 and 1.0.
3. Design outdoor temperature and humidity conditions have been based on weather data for Chicago, IL. Maximum outdoor design conditions are 92°F db/76°F wb with a minimum winter temperature of -6°F.

INNOVATION IN DESIGN:
ID Credit 1 – Exemplary Performance in Development Density
1. As long as no work is done beyond the exterior face of the building, there are no additional requirements.

ID Credit 2 – Exemplary Performance for Access to Public Transportation:
1. As long as no work is done beyond the exterior face of the building, there are no additional requirements.

ID Credit 3 – Exemplary Performance in Building Re-use:
    1. As long as no work is done beyond the exterior face of the building, there are no additional requirements

1016

Rider to Lease dated the       day of          20__, made by and between UNITED STATES OF AMERICA acting by and through the United States General Services Administration ("GSA"), ("Lessor") and Subway Real Estate, LLC, ("Lessee").  Premises will be known as:

236 S. State Street
Chicago, IL 60604

Notwithstanding any clause in this Lease to the contrary, the following provisions shall prevail:

Definitions

The following terms when used hereinafter shall be defined as follows:

Building:

The Lessor's property (including the land), of which demised premises comprise a portion.

Premises:

The portion of the Building which is leased to Lessee.

R1.    Lessee may assign this Lease or sublet the Premises to any bona-fide licensee/franchisee of Doctor's Associates Inc. ("DAI") doing business as a SUBWAY® sandwich shop, without the prior consent of, but with subsequent written notice to the Lessor, to include copies of executed sublease or assignment agreements.  Such assignment or subletting shall not alter the Lessee's responsibility to the Lessor under this Lease.  Lessor agrees to accept rent from the Lessee, its assignee or sublessee.

**R2.    LESSOR RECOGNIZES AND ACKNOWLEDGES THAT LESSEE IS A DELAWARE LIMITED LIABILITY COMPANY AND THAT LESSEE'S ASSETS CONSIST ALMOST EXCLUSIVELY OF LEASES, SUBLEASES, AND OPTIONS TO PURCHASE LEASED PREMISES. LESSOR ALSO RECOGNIZES AND ACKNOWLEDGES THAT LESSEE WAS ORGANIZED PRINCIPALLY FOR THE PURPOSE OF NEGOTIATING AND DRAFTING LEASES WITH A VIEW TOWARDS SUBLETTING THE LEASED PREMISES TO FRANCHISEES/LICENSEES OF DOCTOR'S ASSOCIATES, INC.  LESSOR RECOGNIZES AND ACKNOWLEDGES THAT IT HAS BEEN ADVISED THAT DAI IS A FLORIDA CORPORATION THAT OWNS ALL RIGHTS TO AWARD FRANCHISES FOR SUBWAY® SANDWICH SHOPS AND THAT LESSOR HAS ALSO BEEN ADVISED THAT LESSEE HAS NO RIGHTS WHATSOEVER TO AWARD FRANCHISES FOR SUBWAY® SANDWICH SHOPS OR COLLECT ANY FRANCHISE RELATED ROYALTIES FROM ANY PROSPECTIVE SUBLESSEE OF THE PREMISES.  LESSOR RECOGNIZES AND ACKNOWLEDGES THAT IT HAS BEEN GIVEN AN OPPORTUNITY, WHETHER BY ITSELF OR WITH THE ASSISTANCE OF ITS PROFESSIONAL ADVISORS, TO MAKE INQUIRY OF LESSEE'S FINANCIAL STATUS AND TO EVALUATE SAID STATUS TO ITS SATISFACTION. LESSOR HAS EITHER MADE SUCH INQUIRY AND IS SATISFIED WITH THE RESPONSE TO SUCH INQUIRY OR HAS AFFIRMATIVELY AND VOLUNTARILY DETERMINED NOT TO DO SO. LESSOR FURTHER RECOGNIZES AND ACKNOWLEDGES THAT NO PERSON OR ENTITY OTHER THAN LESSEE HAS MADE ANY REPRESENTATIONS OF ANY KIND WITH REGARD**

**TO THE ABILITY OF LESSEE TO PERFORM LESSEE'S OBLIGATIONS HEREUNDER. LESSOR ALSO RECOGNIZES AND ACKNOWLEDGES THAT LESSEE INTENDS TO SUBLEASE THE PREMISES TO A PERSON(S) WHO HAS OR WILL BE AWARDED A FRANCHISE/LICENSE FOR A SUBWAY® SANDWICH SHOP FROM DOCTOR'S ASSOCIATES, INC., UNDER WHICH SUBLEASE THE SUBLESSEE WILL PAY RENT DIRECTLY TO LESSOR SO THAT THE RENTAL PAYMENT FROM SUCH SUBLESSEE WILL NORMALLY NOT BE RECEIVED OR HELD BY LESSEE. ALTHOUGH THE SUBLESSEE MAY OPEN A BUSINESS OPERATION DOING BUSINESS AS A SUBWAY® SANDWICH SHOP AND MAY HAVE FRANCHISE AND OTHER BUSINESS RELATIONSHIPS WITH CORPORATIONS RELATED TO OR ASSOCIATED BY THE GENERAL PUBLIC WITH "SUBWAY," AS IT IS COMMONLY KNOWN, LESSOR RECOGNIZES AND ACKNOWLEDGES THAT THE SOLE AND EXCLUSIVE PERSON OR ENTITY AGAINST WHICH IT MAY SEEK DAMAGES OR ANY REMEDIES UNDER THIS OR ANY OTHER DOCUMENT IN WHICH THE LESSOR AND LESSEE OR LESSOR AND SUBLESSEE ARE PARTIES, WHETHER FOR UNPAID RENT AND ASSOCIATED DAMAGES, CLAIMS OF UNJUST ENRICHMENT, CLAIMS OF UNFAIR TRADE PRACTICES, OR ANY OTHER THEORY OF RECOVERY OF ANY KIND OR NATURE, IS LESSEE OR SUBLESSEE. FURTHER, IT IS EXPRESSLY UNDERSTOOD AND AGREED THAT THERE WILL NOT BE ANY LIABILITY WHATSOEVER AGAINST (A) DOCTOR'S ASSOCIATES, INC., ITS SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES AND/OR AGENTS, AND/OR (B) ANY PERSONS AND ENTITIES WHO ARE THE SHAREHOLDERS, DIRECTORS, OFFICERS, EMPLOYEES, AND/OR AGENTS OF THE LESSEE. SUCH EXCULPATION OF LIABILITY SHALL BE ABSOLUTE AND WITHOUT ANY EXCEPTION WHATSOEVER.**

R3.     Lessor shall, at its sole cost and expense, maintain the exterior of the Building, including the roof, walls, foundations, walks, driveways, parking areas, and the structural portion of the Premises, in good condition and repair, except when damaged by Lessee.

R4.     Intentionally Deleted

R5.     Intentionally Deleted

R6.     Lessee's use shall be defined as a restaurant for on and off premises consumption or for any other lawful purpose. Lessor acknowledges that Lessee's menu consists primarily of sandwiches wraps, salads and related items and that from time to time Lessee may add test items to its menu. Lessor further agrees that Lessee may add, delete and/or change its menu without the prior consent of the Lessor provided that Lessee complies with all local codes and ordinances, and that the Lessor has no preexisting agreements prohibiting such menu additions. Lessee may sell fruit smoothies and/or yogurt and salads, but may not have exclusives on these items.   In no event shall Lessee's menu be construed as limited to sandwiches, but Lessee's main theme shall remain sandwiches. Lessee may, but shall not be required to remain open seven (7) days per week twenty-four (24) hours per day.  Lessor acknowledges that that the normal operation of Lessee's business will create certain aromas including but not limited to the aroma of baking bread. Lessee shall be required to prevent aromas from entering the building. No permanent changes or additions by the Lessor will inhibit access to or visibility of the Premises or decrease parking ratio.

R7.     Lessor and Lessee acknowledge that it is extremely important that rent be paid in a timely manner as required by this Lease.  Since Lessee may sublet the Premises to a licensee/franchisee of

Doctor's Associates Inc. and the licensee/franchisee may pay rent directly to Lessor, Lessee does not receive rental income and will not know if rent has not been paid.  Since the parties recognize that time is of the essence in this matter, Lessor agrees to give written notice to Lessee within one hundred eighty (180) days of any failure to perform any of the terms or conditions of this Lease  by Lessee, its sublessee, or assignee.   Failure of Lessor to give such notice will  limit Lessor's monetary claims against Lessee to those specified in article R11 below.  Any notice which is to be given to Lessee shall be deemed sufficiently given if sent by reputable overnight carrier, Certified or Registered Mail, postage prepaid, addressed as follows:

Lessee:
(1)     Subway Real Estate, LLC
        325 Sub Way
        Milford, CT 06461,

(2)     To the Development Agent at:
        8605 West BrynMawr, Suite 314
        Chicago, IL 60631

(3)     And the demised premises.

Lessor address for notice is:

(1)         Retail Program Specialist
            U.S. General Services Administration
            PBS-Leasing Division
            230 South Dearborn Street, Suite 3600
            Chicago, Illinois 60604.

(2)     Copies of all such notices shall be sent to:

            U.S. General Services Administration
            Property Manager – Dirksen Federal Courthouse  219
            S. Dearborn Street, Ste. 200
            Chicago, Illinois 60604.

The customary receipt shall be conclusive evidence of service, and notices shall be effective as of the date of mailing thereof.

Any change in the Lessor entity (including, but not limited to; property ownership, address for notices, etc.) must be authorized in writing by the named Lessor, its mortgagor, or by court order and sent to all the required notification parties as listed above. Absent such acceptable authorization, Lessee shall not be in default of this Lease if it continues to pay rent, nor shall it lose any of its rights or privileges (including, but not limited to; renewal options) as specified herein.

R8.     If the whole or any part of the Premises shall be taken by any lawful authority under the power of eminent domain, then this Lease and the term demised, shall thereupon terminate and Lessee shall be liable for rent only up to the date of such termination.
R9.     In the event of litigation between the Lessor and the Lessee relative to rights, obligations and duties of either party under this Lease, each party shall pay its own attorneys' fees and costs. Additionally, Lessor and Lessee agree that, to the extent permitted under Federal, State or local

rules of civil procedure, Lessor and Lessee shall have the option to participate in any arbitration, deposition or mediation via telephone or video conferencing. Neither Lessor nor Lessee will compel the other to produce a representative to appear in person at the aforementioned proceedings in the jurisdiction where the litigation is taking place, saving as required by a court, the Civilian Board of Contract Appeals, or per the terms of Lease paragraph 31."Disputes".

R10.    Intentionally Deleted

R11.    Notwithstanding any provision in this Lease to the contrary, Lessor and Lessee agree that Lessee's aggregate liability in the event of default shall not exceed forty thousand dollars ($40,000.00) or rent due for the remainder of the Lease, whichever is less. Furthermore, Lessor acknowledges an affirmative duty to mitigate damages and shall in no event accelerate rent. Lessor and Lessee agree that this limitation of liability shall apply to, but not be limited to, all back and future rent, triple net charges (if applicable), late fees, attorney fees and court costs." Upon the termination of this Lease, whether in accordance with this section or otherwise, Lessee shall be permitted access to the Premises to remove any and all logo or trademark items. Such items shall include, but shall not be limited to, signage and murals.

R12.    Intentionally Deleted

R13.    Intentionally Deleted

R14.    In the event Lessor does not execute this Lease and return a fully executed original within thirty (30) days of execution by Lessee, the Lessee may declare this Lease null and void. Within three (3) business days, Lessor shall return any and all monies paid and all counterparts of this Lease executed by Lessee.

R15.    Lessor and Lessee represent that there are no oral agreements affecting this lease, exhibits and rider, if any, attached hereto and forming a part hereof, and that this Lease supersedes and cancels any and all previous negotiations, arrangements, letters of intent, lease proposals, brochures, agreements, representations, promises, warranties and understandings between the parties as stated by, including but not limited to, Lessee's agent(s), employee(s), SUBWAY® franchisee(s), and/or SUBWAY® development agent(s) of Doctor's Associates, Inc. No alteration, amendment, change or addition to this Lease shall be binding upon either party unless reduced to writing and signed by each party.

R16.    Intentionally Deleted

R17.    On or before the expiration or earlier termination of this Lease, Lessee shall surrender to Lessor the leased premises and all of Lessee's alterations and fixtures broom clean, in good order and condition, excepting reasonable wear and tear. Lessee shall be required to remove those alterations or improvements to the leased premises which are installed by Lessee and which are trade fixtures which may be removed without material damage to the lease premises and which are in the nature of furniture, movable refrigeration, movable cooking equipment, storage and display cases, counter shelves and racks. All other alterations and fixtures including, without limitation, those in the nature of ventilating, air conditioning, unmovable refrigeration, , plumbing, sprinkling systems, outlets, partitions, doors, vaults, paneling, molding or flooring shall be surrendered with the leased premises and Lessee need not remove them.

R18.    Lessor, within twenty (20) days of Lessee's request, shall deliver to Lessee an executed, written, Estoppel Certificate (attached) identifying Lessee and this Lease and certifying and confirming, in addition to any information or confirmation Lessee may reasonably require, the following:

A.    That this Lease is either unmodified since its execution and in full force and effect, or modified since its execution but still in full force and effect as modified;
B.    That Lessee is not in default of any of its obligations under this Lease;
C.    The Lease Term, Rent Commencement Date, Expiration Date, Current Rent, Renewal Periods remaining as to the Leased Premises for which the Estoppel Certificate applies.

In the event Lessor shall fail to return such statement within twenty (20) days of Lessee's request, Lessee shall presume that there are no defaults, monetary or non-monetary, under the lease and Lessor shall be estopped from rebutting such presumption.  Lessee may rely on such Certificate as true and correct.  The information contained within the Estoppel Certificate shall be binding upon the Lessor, its assignees and successors in interest."

R19.  Intentionally Deleted

R20.    Lessor covenants, warrants and represents that upon commencement of the Lease term, Lessor has full right and power to execute and perform this Lease, and to grant the estate demised herein; and that Lessee, upon the payment of the rent herein reserved and performance of the covenants and agreements hereof, shall peaceable and quietly have, hold and enjoy the Premises and all rights, easements, covenants, and privileges belonging or in any way appertaining thereto, during the term of this Lease.

R21.    The parties acknowledge that Lessee did not employ the services of a Real Estate Broker.  Therefore, Lessee has no responsibility whatsoever to pay any fees or commissions to Lessor or to any third party in connection with this lease.

**Lessor: UNITED STATES OF AMEERICA,
acting by the General Services Administration**

Signature: _____
Name (please print): _Thomas Walsh_
Title (please print): _Lease Contracting Officer_
_Retail Program Specialist_

**Lessee: SUBWAY REAL ESTATE, LLC**

OCT 0 4 2017

Signature: _____
Name (please print): _Steven G. Merrick_
Title (please print): _Duly Authorized_

EXHIBIT A
ESTOPPEL CERTIFICATE

The undersigned represents that he is the Lessor, or the legal representative of the Lessor, of the premises located at
_____
_____
_____. The undersigned further represents that the following is a true and accurate statement of rent due, related charges, security deposit and last month's rent held by the Lessor for the above-mentioned premises.

The fixed or minimum monthly rental presently payable under the terms of the Lease is $_____ per month and has been paid through _____, _____.

All rent, escalation rent, charges for taxes, maintenance and common areas, cost of living increases payable under the terms of the Lease has been paid through _____, _____ and the Lessee is not presently in default of any of the terms or conditions of the Lease.

All other additional rent, if any, payable under the terms of the Lease has been paid through _____, 20____.

As of this date, _____, Lease arrears are as follows:

| Type | Amount Due | As Of |
|---|---|---|
| Rent | _____ | _____ |
| Taxes thru | _____ | _____ |
| Common Area | _____ | _____ |
| Assessments | _____ | _____ |
| Insurance | _____ | _____ |
| Advertising | _____ | _____ |
| Other | _____ | _____ |
| | | |
| TOTAL | _____ | _____ |

The amount of the security deposit under the Lease is $_____.

Other then as stated above, there are no monies owed under the Lease for the premises between
_____ and _____
dated _____ nor are there any
defaults of the Lease by the Lessee as of such date.

The expiration date of the term of said Lease is _____. The Master Lease provides for _____ renewal terms. In the event the Master Lease provides for renewal options, notification of renewal or non-renewal must be sent to the Lessor no later than:
(Dates of Notification) _____

The Master Lease has been modified, supplemented, or amended _____ time(s). (Copies of the documents must be attached hereto)

The following applies to the aforementioned Master Lease (check one):

_____ The undersigned is the owner, or agent of the owner of the premises, and no other Master Lease exists, or;

_____ Another Master Lease/Ground Lease for the premises exists between the undersigned and _____

_____ dated _____, a copy of which is attached.

The undersigned Lessor/representative of the Lessor hereby acknowledges that the Master Lease and any Amendments to it remain unchanged and in full force and effect.  The Lessor understands that pursuant to the terms of the Master Lease that all changes must be agreed to by the parties to that document in writing.

LESSOR: _____ (Please Print)

ADDRESS: _____ PHONE: _____

CITY: _____ STATE: _____ ZIP: _____

LESSOR'S SIGNATURE: _____ DATE: _____ (REV. 1/10)

NOTARIZATION FOR AN INDIVIDUAL

STATE OF _____ )
                                           )ss:
COUNTY OF _____ )

On this _____ day of _____, 20____ before me appeared _____ to me known to be the person described in and who executed the foregoing instrument, and acknowledged that he executed the same as his free act and deed.

_____
Notary Public

My Commission Expires:

NOTARIZATION FOR A CORPORATION

STATE OF _____ )
                                           )ss:
COUNTY OF _____ )

On this _____ day of _____, 20___ before me personally came _____, to me known, who, by me duly sworn, did depose and say that deponent resides at _____ that deponent is the _____ of, the corporation described in, and which executed the foregoing Agreement, that deponent knows the seal of the corporation, that the seal affixed to the agreement is the corporate seal, that it was affixed by order of the Board of Directors of the corporation; and the deponent signed deponent's name by like order.

_____
Notary Public

My Commission Expires:

NOTARIZATION FOR A PARTNERSHIP

STATE OF _____ )
                                           )ss:
COUNTY OF _____ )

On this _____ day of _____, 20_____ before me, the undersigned, a Notary Public in and for said County and State, personally appeared _____ known to me to be the person who executed the within instrument as a Partner of _____, partnership, and acknowledged to me that the partnership executed the same.

_____
Notary Public

My                     Commission               Expires:

# EXHIBIT B



February 6, 2019

<u>Via UPS with delivery confirmation</u>

Subway Real Estate LLC
325 Bic Drive
Milford, Connecticut 06461

Re:   Default Notice - Lease dated October 11, 2017 ("Lease") between United States of America ("Government" or "Lessor"), acting by the U.S. General Services Administration ("GSA"); and Subway Real Estate LLC, ("Lessee") for the Premises located at 11 West Quincy Court (also known as 236 South State Street); Chicago, Illinois

To Whom It May Concern:

In accordance with article 43 - "Default, Covenant to Operate, Abandonment", you are hereby given thirty (30) days notice to cure the below defaults in the performance of your Lease obligations:

•      Past Due Rental – for the months of  November & December, 2018, and January & February, 2019, totaling $24,694.34 ($7,563.67 per month for three months, $2,003.33 for November), is now due and payable.

Your immediate attention is required to avoid Lease termination.

Sincerely,

Tom Walsh
Retail Program Specialist
Real Estate Division

Enclosure

Cc:    Subway Development Corp. of Chicagoland
        5L:RFoltman

U.S. General Services Administration
Public Building Service
230 S. Dearborn, Ste.: 3600
Chicago IL  60604

# EXHIBIT C



U.S. General Services Administration

March 13, 2019

**<u>Via UPS with delivery confirmation</u>**

Subway Real Estate LLC
325 Bic Drive
Milford, Connecticut 06461

Re:     TERMINATION NOTICE - Lease dated October 11, 2017 ("Lease") between
        United States of America ("Government" or "Lessor"), acting by the U.S. General
        Services Administration ("GSA"); and Subway Real Estate LLC, ("Lessee") for
        the Premises located at 11 West Quincy Court (also known as 236 South State
        Street); Chicago, Illinois

_____

To Whom It May Concern:

Lessee's failure to cure the Lease default as notified in Lessor's letter dated February 6, 2019, has resulted in Termination of the above referenced Lease agreement.

Per the terms of Article 5, BASE RENT, Lessee is delinquent in the payment of rent for the months of November and December, 2018, and January, February and March 2019, totaling $32,258.01 ($7,563.67 per month for four months, $2,003.33 for November).

To preserve Lessee's rights in clause R11 of Rider to Lease, specifically to limit Lessee's financial liability to $40,000.00 and to retain rights to access Premises for the removal of trade fixtures, Lessor requires the vacation of Premises and its delivery to Lessor.

GSA has requested the United States Attorney's office to begin proceedings to obtain a judicial order of eviction. If the premises are not voluntarily vacated by March 31, 2019, Lessee will be forcibly removed.

Sincerely,

Tom Walsh
Retail Program Specialist
PBS-Real Estate Division

Enclosure

Cc:     Property Manager, GSA
        Subway Development Corp. of Chicagoland
        5L:RFoltman

230 South Dearborn Street, 33rd floor
Chicago, Illinois 60604
www.gsa.gov